IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | No. 17-197 |
| RICHARD BOYLE | : | |

**M E M O R A N D U M**

PRATTER, J.                                                                                                           AUGUST 12, 2022

INTRODUCTION

Richard Boyle was charged with 11 counts of bank robbery in violation of 18 U.S.C. § 2113(a), 10 counts of using and carrying a firearm in the commission of any crime of violence in violation of 18 U.S.C. § 924(c)(1), and 10 counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i). The charges stemmed from a string of bank robberies committed by the "Straw Hat Bandit" (a moniker used by the press at the time) between 2012 and 2016. Following a two-week trial, a jury convicted Mr. Boyle of all 31 counts. The Court imposed a total sentence of 852 months.

Following the jury's verdict, Mr. Boyle pursued a number of avenues to overturn the verdict, all as is evident on the docket in this Court and the Court of Appeals. Mr. Boyle has now filed a motion, pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct the sentence imposed on him. He has also filed two other motions, along with accompanying affidavits and certifications, to disqualify and recuse this Court so that another district court judge would be

1

assigned to hear his § 2255 proceedings.[1] In his affidavits filed therewith, Mr. Boyle argues that he has "alleged sufficient facts that show a personal bias on the part of" this Court, and that the Court's impartiality "might reasonably be questioned." Mot. to Recuse, Doc. No. 172 at ECF 3, 8. More specifically, Mr. Boyle alleges that the Court engaged in unauthorized discussions with Mr. Boyle's erstwhile defense counsel, Catherine Henry, on the substance of his case; conducted a conference with prosecutors and Nino Tinari, who was Mr. Boyle's defense counsel at the time of the trial, which resulted in admission of allegedly fabricated evidence; and that Mr. Tinari failed to adequately represent him at sentencing and during appeal following the Court's confirmatory appointment of Mr. Tinari via the Criminal Justice Act Panel (the "CJA Panel").

In his affidavit, Mr. Boyle first suggests that the Court has shown bias and prejudice against him because it engaged in *ex parte* communication with Ms. Henry, an attorney from the Federal Community Defender Office assigned to his case on or around 2017. This allegation stems from a courtroom conversation on June 14, 2017, between the Court and Robert Livermore, the Assistant U.S. Attorney assigned to Mr. Boyle's case, during which Mr. Boyle's two daughters, sitting in the courtroom gallery, claim to have overheard the Court state, "How about this next case with Mr. Boyle? Catherine Henry and I were laughing during lunch break because this one is an interesting one . . . ." Mot. to Disqualify, Doc. No. 168 at ECF 16, 18; Mot. to Recuse, Ex. A, Doc. No. 172-1 at ECF 3, 5. Mr. Boyle argues that he had never authorized Ms. Henry to discuss the substance of his case with the Court and that neither the Court nor Ms. Henry disclosed to him the nature of that conversation. Mr. Boyle's daughters allege that Ms. Henry "felt comfortable enough to break client-attorney privilege" in

---

[1] Mr. Boyle's motions, affidavits, certificates of service, and supporting exhibits can be found in Docket Nos. 168 and 172. The Court uses the Electronic Case Files system's pagination for clarity in this instance.

2

communicating with the Court because this Judge and Ms. Henry teach a law school course on trial advocacy together. Mot. to Disqualify, Ex. A, Doc. No. 168 at ECF 16, 18; Mot. to Recuse, Ex. A, Doc. No. 172-1 at ECF 3, 5. Mr. Boyle further alleges that the personal bias resulting from the Court's conversation with Ms. Henry is corroborated by a misstatement of fact in the Court's memorandum of law pertaining to his motion to dismiss the indictment and his motion for judgment of acquittal or a new trial.

Mr. Boyle then contends that Mr. Tinari, who was later retained by Mr. Boyle as counsel for the two-week trial, deceived Mr. Boyle by permitting cell phone record evidence allegedly fabricated by the Government to enter the evidentiary record, without Mr. Boyle present and without his later consent. Mr. Boyle suggests that, because he had been escorted from the courtroom for lunch at the time the Court, Mr. Livermore, and Mr. Tinari were discussing the issue of admission of evidence, the Court permitted a violation of Rule 43 of the Federal Rules of Criminal Procedure. Fed. R. Crim. P. 43. The subsequently admitted evidence, Mr. Boyle argues, was "the crux of the Government's case and resulted in [his] wrongful conviction." Mot. to Disqualify, Doc. No. 168 at ECF 10; Mot. to Recuse, Doc. No. 172 at ECF 12.

Finally, Mr. Boyle avers that the Court erred when it tacitly approved of the deprivation of his constitutional right to defense counsel by appointing Mr. Tinari as CJA Panel counsel following trial to continue his representation of Mr. Boyle for sentencing and appeal and, later, by then re-appointing Ms. Henry as a stand-by counsel when Mr. Boyle elected to proceed *pro se* post-trial. As set forth in his affidavit, Mr. Boyle alleges that the Court failed to inquire why Mr. Boyle argued post-trial motions and "gave tacit approval for [Mr. Tinari's] lack of preparation and failure to do any work on the motions." Mot. to Disqualify, Doc. No. 168 at ECF 11; Mot. to

Recuse, Doc. No. 172 at ECF 13. According to Mr. Boyle, the facts alleged in his affidavit warrant the Court's disqualification under 28 U.S.C. §§ 144, 455(a) and (b).

For the reasons discussed below, the Court denies Mr. Boyle's motions.

## LEGAL STANDARDS

### I.  Recusal Under 28 U.S.C. § 144

The statute governing recusal, 28 U.S.C. § 144, provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

28 U.S.C. § 144. The mere filing of an affidavit, however, will not automatically disqualify a judge; rather, the Court must determine whether the affidavit (1) alleges legally sufficient facts to warrant recusal and (2) was timely filed. *United States v. Townsend,* 478 F.2d 1072, 1073 (3d Cir. 1973).

It falls to the judge implicated in a § 144 affidavit to determine whether legally sufficient facts have been alleged. *Id.* "It is equally [the judge's] duty to deny the affidavit on insufficient grounds as to allow it on sufficient allegations." *Simmons v. United States*, 302 F.2d 71, 75 (3d Cir. 1962); *see also Simonson v. Gen. Motors Corp.*, 425 F. Supp. 574, 578 (E.D. Pa. 1976) ("While, in proper cases, we have a duty to recuse ourselves, in [other cases], we have [a] concomitant obligation not to recuse ourselves; absent a valid reason for recusal, there remains what has sometimes been termed a 'duty to sit.'").

"An affidavit [under § 144] is untimely when the party significantly invokes participation by the court in pretrial motions or other judicial proceedings between the time he first learned of the asserted prejudice and the time the § 144 motion was filed." *Shank v. Am. Motors Corp.*, 575

4

F. Supp. 125, 128 (E.D. Pa. 1983) (finding that where movants became aware of alleged prejudice on December 9, 1982, and did not move for recusal until June 7, 1983, and where movants had participated in multiple conferences and filed answers and motions between those dates, the motion was untimely). "The reason for this requirement is obvious—a party with knowledge of facts that may implicate the need for the presiding judge to recuse himself may not sit idly by and gamble upon the outcome of a proceeding, secured in the knowledge that, if the wrong result ensues, it can always cry foul." *Cooney v. Booth*, 262 F. Supp. 2d 494, 503–04 (E.D. Pa. 2003), *aff'd*, 108 F. App'x 739 (3d Cir. 2004). "[T]imeliness is a significant factor in a § 144 proceeding," but it is not dispositive. *Smith v. Danyo*, 585 F.2d 83, 86 (3d Cir. 1978).

When a party files a motion and supporting affidavit pursuant to § 144, the district judge will accept the allegations of the movant as true. *United States v. Furst*, 886 F.2d 558, 582 (3d Cir. 1989). "Neither the truth of the allegations nor the good faith of the pleader may be questioned, regardless of the judge's personal knowledge to the contrary." *Mims v. Shapp*, 541 F.2d 415, 417 (3d Cir. 1976). The movant must set forth "[f]acts, including time, place, persons, and circumstances." *Townsend*, 478 F.2d at 1074. Generalized statements which fail to cite to specific acts will not suffice to substantiate "a successful attack upon the qualifications of the Judge to sit in the proceedings." *Simmons*, 302 F.2d at 76; *see also United States v. Enigwe*, 155 F. Supp. 2d 365, 370 (E.D. Pa. 2001) ("[T]he affidavit on which a motion for recusal is based must state particularized facts and reasons showing why recusal is required.").

However, the Court is not required to credit "[c]onclusory statements and opinions." *United States v. Vespe*, 868 F.2d 1328, 1340 (3d Cir. 1989); *see also Cooney*, 262 F. Supp. 2d at 502 ("[T]he court may disregard personal opinions and conclusions when determining whether the allegations

5

within the affidavit are sufficient to establish the existence of personal bias on the part of the presiding judge."); *Bumpus v. Uniroyal Tire Co. Div. of Uniroyal Inc.*, 385 F. Supp. 711, 715 (E.D. Pa. 1974) ("Subjective conclusions or opinions that bias or the appearance of impropriety may exist are insufficient to require a Judge's disqualification."). The judge against whom the § 144 affidavit is filed has a duty to withdraw when "the reasons and facts, regardless of their truth or falsity, fairly support 'the charge of a bent of mind that may prevent or impede impartiality of judgment.'" *Simmons*, 302 F.2d at 75 (quoting *Berger v. United States*, 255 U.S. 22, 33–34 (1921)).

## II.   Recusal and Disqualification Under 28 U.S.C. § 455

Separately, 28 U.S.C. § 455 governs disqualification based on the appearance of impropriety or actual bias. Under 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The test for disqualification under this provision is "whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." *In re Kensington Intern. Ltd.*, 368 F.3d 289, 301 (3d Cir. 2004). The standard is objective: "[t]he judge does not have to be *subjectively* biased or prejudiced, so long as he *appears* to be so." *United States v. Ciavarella*, 716 F.3d 705, 718 (3d Cir. 2013) (quoting *Liteky v. United States*, 510 U.S. 540, 553 n.2 (1994)); *see also Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997) ("The standard for recusal is whether an objective observer reasonably might question the judge's impartiality."). Under 28 U.S.C. § 455(b)(1), recusal is required where a judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1).

Unlike the analysis under 28 U.S.C. § 144, "when deciding a motion for recusal under Section 455(a) [or Section 455(b)], the court need not accept the Movant's allegations as true." *Cooney*, 262 F. Supp. 2d at 504 (collecting cases); *see also United States v. Sciarra*, 851 F.2d 621, 625 n.12 (3d Cir. 1988) (noting the "considerable authority for the proposition that the factual accuracy of affidavits submitted pursuant to 28 U.S.C. § 455 may be scrutinized by the court deciding the motion for recusal"); 13D Charles Alan Wright et al., Federal Practice & Procedure § 3550 (3d ed. 2022 update) ("If a party does move for disqualification under § 455, and the motion is supported by an affidavit, . . . the court is not required to accept the factual statements as true."). Rather, the judge is permitted to contradict the factual allegations made in the movant's affidavit based on her own knowledge and the record. *Cooney*, 262 F.Supp.2d at 504 (citing *Mass. Sch. of Law at Andover, Inc.*, 872 F. Supp. at 1349).

Although § 455 does not have an explicit timeliness requirement, courts of appeals have ruled that parties seeking disqualification under § 455(a) should file a timely motion because "[t]he judicial process can hardly tolerate the practice of a litigant with knowledge of circumstances suggesting possible bias or prejudice holding back, while calling upon the court for hopefully favorable rulings, and then seeking recusal when they are not forthcoming." *In re Kensington Intern. Ltd.*, 368 F.3d at 312 (quoting *Danyo*, 585 F.2d at 86). In the Third Circuit, timeliness is just one factor in the court's discretion in determining whether a judge should decline her assignment pursuant to § 455. *Id*.

### III. Adverse Rulings Not a Basis for Finding of Judicial Bias

"[D]isagreement with a judge's determinations and rulings cannot be equated with the showing required to so reflect on impartiality as to require recusal" because, in the event a

7

court's rulings are in error, such rulings are reviewable on appeal. *In re TMI Litig.*, 193 F.3d 613, 728 (3d Cir. 1999). The Supreme Court weighed in on the inappropriateness of disqualification on the mere basis of an adverse ruling long ago:

> [Recusal] was never intended to enable a discontented litigant to oust a judge because of adverse rulings made, for such rulings are reviewable otherwise, but to prevent his future action in the pending cause. Neither was it intended to paralyze the action of a judge who has heard the case, or a question in it, by the interposition of a motion to disqualify him between a hearing and a determination of the matter heard.

*Ex Parte Am. Steel Barrel Co.,* 230 U.S. 35, 44 (1913).

## DISCUSSION

As set forth above, Mr. Boyle has alleged three categories of circumstances or events that he argues warrant recusal: (1) *ex parte* communications and relationship with his lawyer, Ms. Henry; (2) erroneous admission of evidence; and (3) incorrect judicial rulings as to appointment of defense counsel. However, before turning to the substance of these allegations, the Court first examines whether Mr. Boyle's recusal motions are timely.

**I.      Timeliness**

First, the Court is unconvinced that Mr. Boyle's motions to disqualify the Court have been made in a timely manner under either § 144 or § 455. The affidavits of Mr. Boyle's daughters assert that they first made their father aware of the Court's alleged prejudice "as soon as [they] got the chance to speak with him" following the conversation they allege occurred on June 14, 2017, nearly five years before Mr. Boyle filed his motion to disqualify. Mot. to Disqualify, Doc. No. 168 at ECF 16, 18; Mot. to Recuse, Ex. A, Doc. No. 172-1 at ECF 3, 5. The last event to which Mr. Boyle cites in alleging the Court's bias, a hearing in which he argues that the Court failed to inquire as to why Mr. Boyle, and not Mr. Tinari, was arguing the motions

took place on July 15, 2019, or about two years and nine months before Mr. Boyle filed his motion to disqualify. Between June 2017 and the April 2022 filing of the present motions, not only was there a two-week trial, but he or his counsel also filed more than 20 motions on other issues and even endeavored to raise the same claims as to what his daughters believe they heard. Moreover, Mr. Boyle has been closely involved in the litigation of his own case—per his own affidavit—by writing and arguing many motions himself. Mr. Boyle cannot argue that he did not have significant opportunities pre- and post-trial to assert the Court's prejudice. *See Shank*, 575 F. Supp. at 128 (finding "no room for argument that defendants did not affirmatively invoke the participation of th[e] court between the time they first learned of the alleged bias and the time they filed the § 144 motion" where defendants submitted 16 filings in the interim).

Therefore, the Court could well consider Mr. Boyle's §§ 144 and 455 motions to be untimely. *Townsend,* 478 F.2d at 1073. Nevertheless, mindful that the Third Circuit Court of Appeals requires district courts to weigh timeliness as but one factor under the § 455 disqualification analysis, *In re Kensington Intern. Ltd.*, 368 F.3d at 312, the Court will address the substance of each category of allegations in turn.

**II.     Alleged *Ex Parte* Communication with Ms. Henry**

Mr. Boyle alleges that the Court communicated *ex parte* with his lawyer, public defender Catherine Henry in 2017 while she was representing him. Indeed, Mr. Boyle has filed four affidavits in total (two affidavits with duplicate versions) quoting a statement Mr. Boyle's two daughters allege the Court made in their presence.

Legally sufficient allegations of *ex parte* communications can certainly support disqualification. *See id.* at 293, 309 (finding disqualification proper after judge had "extensive *ex*

9

*parte* communications" with parties and "consulting Advisors which [the judge] had appointed"). While the Court must take any *facts* averred in Mr. Boyle's affidavit as true under § 144, the Court should not disqualify itself if the basis of the motion is purely speculative conclusions. *Enigwe*, 155 F. Supp. 2d at 372 (finding that movant's assertions of the court's *ex parte* communications with his attorney were "based on hearsay statements, opinions, inference and conclusory assertions—not particularized facts" and did not merit recusal). "Opinions and subjective conclusions, whether well intentioned or not, based on suspicion, innuendo, speculation or conjecture are legally insufficient to warrant recusal under Section 144." *Cooney*, 262 F. Supp. 2d at 502.

Here, Mr. Boyle's allegations via his daughters' surmises, taken as true, are not legally sufficient to provide a basis for recusal under § 144. Mr. Boyle asserts that the "extrajudicial source" doctrine applies to the alleged communications between the Court and Ms. Henry because "the source of the partiality lies in knowledge gained outside the course of judicial proceedings." Mot. to Disqualify, Doc. No. 168 at ECF 6; Mot. to Recuse, Doc. No. 172, at ECF 8. But he does not allege any facts to support this claim. Assuming, as the Court must for § 144 purposes, that the two-sentence statement quoted in the affidavits of Mr. Boyle's daughters is accurate, the Court's finding a case to be "interesting" or, on the other hand, "disinteresting," does not reasonably indicate bias or prejudice against Mr. Boyle. Moreover, any insinuation in Mr. Boyle's or his daughters' affidavits that the Court's co-lecturing a law school class with Ms. Henry would or could have an impact on or relationship, good or bad, to the outcome of Mr. Boyle's case is pure conjecture and speculation, devoid of any factual basis.

10

To the extent that Mr. Boyle labels all communication with counsel outside of his presence "*ex parte*," Mr. Boyle misunderstands the legal meaning of that phrase. *See e.g.*, Mot. to Disqualify, Doc. No. 168 at ECF 7–8; Mot. to Recuse, Doc. No. 172, at ECF 9–10. Communications between the Court and counsel without a client present are not "*ex parte*" in relation to the client. A communication is *ex parte* when it involves the Court and one side, not when it involves counsel without a client present. *See Ex Parte Communication*, *Black's Law Dictionary* (11th ed. 2019) (defining *ex parte* communication as a "communication between counsel or a party and the court when opposing counsel or party is not present"); *United States v. Forbes*, 150 F. Supp. 2d 672, 677 (D.N.J. 2001) ("An *ex parte* communication is a communication which takes place between one party in a matter, without the presence of opposing party or parties, with or without notice to such other party or parties."). The absence of a client does not render a communication *ex parte* because the client is a party already represented through his or her counsel. Indeed, many forms of pretrial conferences with counsel take place without clients present. *See United States v. Allick*, 386 F. App'x 100, 104–05 (3d Cir. 2010). Thus, in alleging that the Court did not disclose an "*ex parte* discussion" to him and that conversations outside of his presence could "give rise to bias or prejudice," Mot. to Disqualify, Doc. No. 168 at ECF 8; Mot. to Recuse, Doc. No. 172 at ECF 10, Mr. Boyle fundamentally misunderstands the ability of a court to communicate with counsel without clients present except for specific occasions not germane here. *Allick*, 386 F. App'x at 104–05; Fed. R. Crim. P. 43(b)(3).

Mr. Boyle also alleges that Ms. Henry breached his attorney-client privilege. But even setting aside the issue of whether a motion to disqualify a judge is the correct vehicle to challenge an alleged breach of the *attorney*-client relationship, Mr. Boyle does not allege any

11

specific facts that would suggest that Ms. Henry shared any confidential information with the Court (or the prosecutor) that would break attorney-client privilege. Absent specific facts to support it, the Court need not accept this conclusory allegation.[2]

Turning to the § 455 analysis, the Court is permitted to rely on "facts derived from [its own] knowledge and the record." *Cooney*, 262 F. Supp. 2d at 504. The Court confirms that it has only engaged in permissible administrative and inconsequential conversations with counsel in the courtroom in this matter while awaiting formalities to commence. *See In re School Asbestos Litig.*, 977 F.2d 764 at 789 (contrasting "prejudicial ex parte advocacy" with ex parte administrative communication). The Court finds that a reasonable person, in possession of all relevant facts, would not conclude that this Court's impartiality could reasonably be questioned, even if one were to credit what Mr. Boyle's daughters claim to have overheard from the rear of the courtroom while the Court and counsel conversed casually from counsel's table and the bench.

## III. Erroneous Admission of Evidence

Mr. Boyle next alleges that the Court violated Federal Rule of Criminal Procedure 43 when it conducted a conference between the prosecutors and Mr. Tinari, who was then Mr. Boyle's retained trial counsel, and that this led to an evidentiary error indicative of the Court's bias. But the transcript submitted by Mr. Boyle directly disproves both arguments.

---

[2] Mr. Boyle also alleges that Ms. Henry violated Rule 1.6(a) of the "Rules of Professional Conduct for Attorneys," which the Court construes as a reference to the Pennsylvania Rules of Professional Conduct. But he has not alleged any specific disclosure of "information relating to the representation of a client" either. Pa. R. Prof. C. 1.6(a). Mr. Boyle further contends that he did not authorize "any ex parte communications with the Court" so he did not provide "informed consent" for communications outside of his presence. Mot. to Disqualify, Doc. No. 168 at ECF 7–8; Mot. to Recuse, Doc. No. 172 at ECF 9–10. But Rule 1.6 also carves out disclosure that is "impliedly authorized in order to carry out the representation." Pa. R. Prof. C 1.6(a). An attorney must be able to speak with the Court to carry out a representation, so Mr. Boyle's assertion that he did not provide informed consent addresses only one of multiple exceptions.

12

During a discussion regarding the admission of the Tracfone business records, Mr. Tinari stated that "[i]f he saw the email" documenting certain IP information for the Tracfone business records, he would "speak with [his] client, absolutely" and, together with Mr. Boyle "make a decision as to what we want to do" regarding the admission of the Tracfone business records, labeled as Government Exhibit 302(c). Mot. to Disqualify, Ex. C, Doc. No. 168 at ECF 30; Mot. to Recuse, Ex. C, Doc. No. 172-1 at ECF 17. Following a lunch break, the Court asked Mr. Tinari whether he had seen the discussed email and if admission could proceed, and Mr. Tinari responded: "Yes. We'll have no objection to its admission." Mot. to Disqualify, Ex. C, Doc. No. 168 at ECF 31; Mot. to Recuse, Ex. C, Doc. No. 172-1 at ECF 18.

The transcript submitted by Mr. Boyle shows that there was no violation of Federal Rule of Criminal Procedure 43. Under Federal Rule of Criminal Procedure 43, a defendant need not be present during a "proceeding involv[ing] only a conference or hearing on a question of law." Fed. R. Crim. P. 43(b)(3); *Allick*, 386 F. App'x at 105. Mr. Boyle alleges the brief conference centered around the legal issue of admissibility of Tracfone business records. Even if the Court, the prosecutors, and Mr. Tinari did indeed confer on this matter while Mr. Boyle was not present, this would have been permissible under Rule 43.

Mr. Boyle also argues that the Tracfone business records were incorrectly admitted, without his consent, which "was a violation of [Mr. Boyle's] right to confront, and cross-examine, the alleged witness from Tracfone who was allegedly going to authenticate the fabricated evidence." Mot. to Disqualify, Doc. No. 168 at ECF 9; Mot. to Recuse, Doc. No. 172 at ECF 11. Taking the facts set forth in his affidavit as true, there is no indication that the Court's acceptance of Mr. Tinari's and Mr. Boyle's decision not to object to the admission of the

13

evidence shows a "bent of mind that may prevent or impede impartiality of [the Court's] judgment." *Simmons*, 302 F.2d at 75 (quoting *Berger*, 255 U.S. at 33–34). According to the transcript submitted along with Mr. Boyle's affidavit, there is no indication that the Court was on notice that Mr. Tinari supposedly failed to discuss the admission of the relevant exhibit with Mr. Boyle, even if Mr. Tinari in fact failed to do so. Nor did counsel need to gain Mr. Boyle's permission to make this decision in the first place, as objections to admission of evidence are quintessentially strategic and trial-management decisions for counsel to make. *See McCoy v. Louisiana*, 138 S. Ct. 1500, 1508 (2018) (contrasting "what evidentiary objections to raise" as a strategic decision for counsel, with "decisions [that] are reserved for the client—notably, whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal").

Thus, even taking all the facts in his affidavits related to the admission of the Tracfone records as true, Mr. Boyle has failed to allege any legally sufficient basis to infer bias on the part of the Court.

## IV.     Incorrect Judicial Rulings as to Appointment of Counsel

Finally, Mr. Boyle suggests that the Court's appointment of Mr. Tinari to the CJA Panel on a one-time basis after Mr. Boyle could no longer pay him as retained counsel so that Mr. Boyle could continue with his previously chosen attorney and then of Ms. Henry as stand-by counsel while Mr. Boyle later proceeded *pro se* show bias or prejudice on the part of the Court. However, the Court finds that Mr. Boyle has not alleged sufficient facts to support these charges and justify disqualification.

Mr. Boyle, in his affidavit, suggests that the Court acted imprudently by appointing Mr. Tinari to the CJA Panel. However, district judges are empowered to admit an attorney to the CJA

14

Panel *pro hac vice* "in exceptional circumstances" and where such an appointment is "in the interest of justice, judicial economy or continuity of representation, or there is some other compelling circumstance[] warranting his or her appointment." *United States v. Waz*, No. 08-cr-365-32, 2009 WL 10676643, at *2 (W.D. Pa. April 6, 2009) (quoting Administrative Office of the United States Courts, Guide to Judiciary Policies and Procedures, Vol. VII, Section A, Guidelines for the Administration of the Criminal Justice Act § 2.01D). Mr. Boyle, of his own volition, had first retained Mr. Tinari during the course of the trial. The Court, after Mr. Boyle could no longer afford to retain Mr. Tinari and Mr. Tinari moved to withdraw because he was no longer being paid, concluded that it was appropriate to appoint Mr. Tinari to the CJA Panel to ensure continuity of representation for Mr. Boyle in post-trial matters. The alleged dissatisfaction with Mr. Tinari's representation occurred following the Court's decision to appoint Mr. Tinari to the panel.

Turning to the re-appointment of Ms. Henry from the Federal Defenders, the Court also has significant discretion to appoint standby counsel when a criminal litigant elects to proceed in his case on a *pro se* basis. "[W]hile a defendant has a right to proceed pro se 'a defendant's [S]ixth [A]mendment rights are not violated when a trial judge appoints standby counsel even over the defendant's objection.'" *United States v. Cannistraro*, 799 F. Supp. 410, 417 (D.N.J. 1992) (quoting *McKaskle v. Wiggins*, 465 U.S. 168, 184 (1984)). This is to ensure that a defendant has a resource to which he might turn when he may not be familiar in certain legal matters and to encourage fairness and efficiency. *Id.* at 417. The Third Circuit Court of Appeals has "stress[ed] that appointment of standby counsel is the prudent course to take when a defendant elects to proceed pro se." *United States v. Welty*, 674 F.2d 185, 193 n.5 (3d Cir. 1982). The Court's decision to follow the Court of Appeals' recommendation and appoint a federal

15

defender with decades of experience is not a basis to infer bias against Mr. Boyle. (Ms. Henry's cessation of her representation of Mr. Boyle before trial arose only because Mr. Boyle decided to pay for retained counsel rather than to accept the public defender for free. There had been no suggestion of dissatisfaction with Ms. Henry's service.)

Moreover, even if the Court's appointments of counsel in this matter are considered rulings adverse to Mr. Boyle (which would strain reason), Mr. Boyle's disagreement with the appointments cannot be conflated with the required showing of partiality. *In re TMI Litig.*, 193 F.3d at 728. Rather, if Mr. Boyle wished to contest the adequacy of representation, such a challenge should have been mounted through appellate channels, not through recusal motions that would "paralyze the action of [the district] judge." *Ex Parte Am. Steel Barrel Co*., 230 U.S. at 44. Yet Mr. Boyle did not raise the issue of Mr. Tinari's or Ms. Henry's appointment or ineffective assistance of counsel at all on direct appeal, although he did so more recently in his § 2255 habeas motion. Thus, Mr. Boyle's allegations are not sufficient to show that the Court acted imprudently or that its appointments of Mr. Tinari and Ms. Henry demonstrate any antagonism towards him, nor does the Court find that a reasonable observer with knowledge of all the facts would conclude otherwise.

## CONCLUSION

The question of whether to recuse or disqualify is not to be taken lightly by a district court judge. To do so would improperly encourage litigants to try to shop for judges on the bench by means of making charges of bias, prejudice, or improprieties. The straw man arguments and allegations of fact set forth in Mr. Boyle's affidavits fail to warrant recusal under either § 144 or § 455, and the Court will not here abandon its "duty to sit." For the foregoing reasons, the Court denies Mr. Boyle's motions. An appropriate Order follows.

BY THE COURT:

s/ Gene E.K. Pratter  
**GENE E.K. PRATTER**  
**UNITED STATES DISTRICT JUDGE**