# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Action No. 2:17-197 |
| | ) | |
| v. | ) | Civil Action No. 2:22-1331 |
| | ) | |
| RICHARD BOYLE | ) | |

## OPINION

**Mark R. Hornak, United States District Judge**

This matter is before the Court on a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence filed pro se by Defendant Richard Boyle (ECF No. 167), which is opposed by the Government (ECF No. 175).[1]  For the reasons set forth below, the motion will be denied. The Court likewise will deny the related Motions at ECF Nos. 202, 212, 232, and 239.

## I.    FACTUAL BACKGROUND

The record reflects Boyle is a serial bank robber.  In 2008, he pled guilty to another series of eight bank robberies.  "In a March 16, 2011, statement to the Parole Board regarding his prior eight bank robbery convictions, BOYLE stated, 'In April 2007 after a period of unemployment, I was about to be evicted from our house.  From the period of May of 2007 to February 2008, I robbed numerous banks. . . . The first bank I robbed was out of panic of losing my house, but I believe the other robberies occurred because of greed and laziness.  BOYLE explained that he used the money to buy a car, pay bills, pay rent, pay for medicine for his family, and buy camera equipment to start a new business." (ECF No. 175 at 4).  He was still on parole for those eight

---

[1]    All references to the record are to docket number 17-cr-00197 unless otherwise stated. For citations to ECF filings, pages numbers refer to the number appearing in the CM/ECF header, which may not align with the document's original page numbering.

bank robberies when the multi-year crime spree leading to the convictions in this case began.  *Id.* at 3.

"From 2012 to 2016, he committed eleven bank robberies, stealing almost half a million dollars."  *United States v. Boyle*, 849 F. App'x 325 (3d Cir. 2021).  It appears Boyle thought he had the "perfect plan."  But the perfect plan was foiled when he did not realize the Warminster branch of the Bucks County Free Library had video surveillance and he would be recognized both by a library employee and a library patron as being in the library on the date and time a Tracfone was activated, a Tracfone that was used in placing a diversionary call before the last bank robbery.

The Court of Appeals summarized the evidence presented at trial as follows:

> Needing funds to pay the bills, Boyle began moonlighting as a bank robber.  Meticulous in his planning and routine in his execution, he preferred to stage the robberies at the end of the week, wearing an outer layer of clothing, hat, glasses, and a mask.  Gloves concealed his fingerprints, and he sometimes used bleach to remove traces of DNA.  As a result, no physical evidence linked Boyle to the robberies.
>
> But plenty of circumstantial evidence did.  Cell site data showed Boyle's phone idle during all but one of the robberies.  Before one heist, a disposable phone was used to place a diversionary call to law enforcement about a bomb threat.  Law enforcement traced that phone to a library, where video surveillance and witness testimony placed Boyle at the time of the call.  Boyle's finances followed the robberies, recovering from less than $400 in the bank and over $20,000 in debt to spending large sums, as the robberies racked up.  After many—sometimes even the same day—Boyle would make large deposits of cash into his personal and business accounts.  He explained his fortune on timely gambling wins and a host of odd jobs, but he named only a handful of customers, who collectively paid him around $1,200, and casino records show Boyd was a low-stakes gambler who lost more than he won.
>
> A grand jury charged Boyle with 11 counts of bank robbery, in violation of 18 U.S.C. § 2133(a); 10 counts of using or carrying a

firearm during a crime of violence, in violation of 18 U.S.C. § 924(c); and 10 counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).  Before trial, the Government moved to admit evidence, pursuant to Federal Rule of Evidence 404(b), about Boyle's 2008 conviction for multiple bank robberies, and financial information he provided to his state parole officer.  The District Court granted the motion, allowing Boyle to renew his objection at trial.  Boyle also filed a motion for a hearing under *Franks v. Delaware*, arguing that the affidavit in support of a search warrant executed at his home contained false statements or omissions.  The District Court denied that motion, and a second raising the same argument.  At trial, and again post-trial, the District Court denied Boyle's motions for a judgment of acquittal.

The jury returned guilty verdicts on all counts.  The District Court sentenced Boyle to a term of imprisonment of 852 months, a three-year term of supervised release, and restitution of $495,686.  Boyle timely appealed and we will affirm.

*Id*. at 327.

## II.    PROCEDURAL HISTORY

On April 12, 2017, a grand jury returned a 31-count indictment charging Boyle with eleven counts of bank robbery in violation of 18 U.S.C. § 2133(a); ten counts of using or carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c); and ten counts of money laundering in violation of 18 U.S.C. § 1856(a)(1)(B)(i).  (ECF No. 1).  An Order for a bench warrant (ECF No. 2) and an Order for Ad Prosequendum (ECF No. 3) were issued as Boyle was in custody at SCI-Graterford at the time on a state parole violation.  The Warden of SCI Graterford was directed to produce Boyle "into the custody of Task Force Office[r] Jeffrey M. McGee of the Federal Bureau of Investigation for an initial appearance[.]"  (ECF No. 3).  The court also ordered that Boyle was to remain in federal custody pending any further proceedings in the federal criminal case.  *Id*.

Boyle made his initial appearance in federal court on April 20, 2017.  (ECF No. 4).  Five days later, on April 25, 2027, Boyle again appeared in court and entered a plea of not guilty on all counts.  Additionally, the Court appointed the Federal Community Defender Office – EDPA, to represent Boyle.  (ECF No. 6).  The next day, April 26, 2017, Catherine C. Henry,[2] Senior Litigator with the Federal Community Defender Office, entered her appearance on behalf of Boyle (ECF No. 7) and on May 3, 2017, Marianna J. Meehan, Assistant Federal Defender with the Federal Community Defender Office, entered her appearance on behalf of Boyle.  (ECF No. 10).  Shortly thereafter, defense counsel began filing motions to extend the pretrial motions deadline and the trial date.  (ECF Nos. 8, 16).

On November 13, 2017, privately-retained attorney Nino V. Tinari entered his appearance on behalf of Boyle.  (ECF No. 18).  Thereafter, Attorney Tinari filed an omnibus pre-trial motion, which included ten motions, most of which pertained to production of discovery material.  (ECF No. 19).

Jury selection began on March 6, 2019.  "[T]he Government presented 70 witnesses and offered hundreds of pages of documents into evidence over the course of the two-week trial." (ECF No. 130 at 1).  The defense presented two witnesses:  Boyle and his daughter, Haley Coolbaugh.  *See* TT, 3/13/19 (ECF No. 115).  At the conclusion of the two-week trial, the jury found Boyle guilty on all 31 counts of the indictment.  (ECF No. 97).[3]  Post trial, Boyle, through

---

[2]    On December 6, 2024, Catherine C. Henry was appointed as a United States District Judge for the Eastern District of Pennsylvania.  *See* https://www.fjc.gov/history/judges/henry-catherine.  The undersigned is a duly appointed and sitting District Judge for the Western District of Pennsylvania, sitting with this Court for this case by special designation of the Chief Circuit Judge for the Third Circuit. (ECF No. 235).

[3]    On March 21, 2019, six days after the jury verdict, Attorney Tinari filed a motion to withdraw as counsel stating "Defendant has exhausted his funds and is unable to meet his

counsel, filed two motions: (1) a motion for judgment of acquittal or a new trial, (ECF No. 100), and (2) a motion to dismiss the indictment. (ECF No. 108). Both were denied by Memorandum dated September 3, 2019. (ECF No. 130).

A sentencing hearing originally was scheduled for November 5, 2019, (ECF No. 132), and then rescheduled to December 17, 2019. (ECF No. 134). On November 27, 2019, a little over two weeks before the sentencing hearing, Boyle, pro se, filed a motion for substitution of counsel, ECF No. 137, which was denied on December 18, 2019. (ECF No. 140). Then on January 9, 2020, Boyle, again pro se, filed a request for self representation. (ECF No. 142). The trial court granted this request, but also re-appointed the Federal Community Defender Association as stand-by counsel. (ECF No. 144).

Sentencing proceeded on February 5, 2020. (ECF No. 150). After conducting a two-hour sentencing hearing, the trial court sentenced Boyle to a term of imprisonment of 852 months, a 3-year term of supervised release, and restitution of $495,686.00. *Id*. *See also* ECF No. 160 - Transcript of Sentencing Hearing.

Boyle's notice of appeal to the United States Court of Appeals for the Third Circuit was filed at No. 20-1286 on February 12, 2020. (ECF No. 152). On appeal, Boyle proceeded pro se. He challenged his judgment of conviction and sentence, contending errors in the admission of evidence and prosecutorial misconduct. On March 9, 2021, the Court of Appeals affirmed the judgment of sentence. *United States v. Boyle*, 849 F. App'x 325 (3d Cir. 2021). Five months

---

contractual obligations with the undersigned Counsel." ECF No. 99 at 2. After conducting a hearing on the matter, in which Attorney Tinari confirmed his willingness to represent Boyle pursuant to the Criminal Justice Act, on May 1, 2019, the Court appointed Attorney Tinari to represent Boyle. (Although Attorney Tinari was "not a member of the approved list of CJA attorneys in this Court, [] the Court will make a one-time appoint[ment] of Mr. Tinari for this case only."). (ECF No. 107).

later, on October 12, 2021, the Supreme Court of the United States denied his petition for writ of certiorari.  *See* https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/21-5570.html.

Six months later, on April 4, 2022, Boyle filed, pro se, the instant motion ("§ 2255 Motion"), with Memorandum in Support, and a host of exhibits, claiming that his counsel was constitutionally ineffective and the trial court violated his constitutional rights.  (ECF No. 167).[4] The Government filed a response in opposition to the § 2255 Motion (ECF No. 175), to which Boyle filed a Reply (ECF No. 198).

Boyle also has filed a number of related motions now before the Court:  two motions for an evidentiary hearing (ECF Nos. 202 and 212), a motion for judicial notice (ECF No. 232), and a motion to amend his § 2255 Motion (ECF No. 239), as well as two letters to the Court (ECF Nos. 245 and 246).  The Government filed a response in opposition to the motions (ECF No. 241) to which Boyle filed  Reply Briefs. (ECF Nos. 242 and 243).[5]

---

[4]    The motion is 85 typewritten pages, and accompanied by a 14-page typewritten Memorandum in Support, and approximately 150 pages of exhibits.  (ECF No. 167).

[5]    The Court has found there is no merit to the § 2255 Motion, and the Court likewise finds there is no merit to the motions filed at ECF Nos. 202, 212, 232, and 239.  For example, after reviewing the parties' submissions and the record as a whole, the Court has determined no evidentiary hearing is warranted; accordingly, ECF Nos. 202 and 212 will be denied.  In ECF Nos. 232 and 239,  Boyle continues to attack the veracity of Detective McGee's testimony both before the grand jury and at trial.  Similar claims were made by Boyle to both the trial court and the Court of Appeals and such claims were rejected.  And in this § 2255 Motion, he raises a number of related claims that counsel was ineffective in his cross examination of Detective McGee, all of which the Court has examined thoroughly and found to have no merit. There is no need to supplement the record any further with Boyle's claims about Detective McGee's testimony and as such, the motions at ECF Nos. 232 and 239 will denied.

The case was originally assigned to the Honorable Gene E.K. Pratter, who presided over all phases of the case.  (*See* ECF Nos. 1 – 216).  Lamentably, due to the passing of Judge Pratter, the case was reassigned to the Honorable Mitchell S. Goldberg, Chief Judge of the United States District Court for the Eastern District of Pennsylvania, on May 21, 2024.  (ECF No. 217).  On July 31, 2025, the Honorable Michael A. Chagares, Chief Judge, United States Court of Appeals for the Third Circuit, reassigned the case to the undersigned.  (ECF No. 235).

As all briefing has concluded, the matter is ripe for disposition.  For the following reasons, the § 2255 Motion and the related motions at ECF Nos. 202, 212, 232, and 239 will each be DENIED.

## III.    STANDARD OF REVIEW

"A Section 2255 petition enables a defendant to petition the court that imposed the sentence, collaterally attacking a sentence imposed after a conviction."  *Kaetz v. United States*, Case Nos. 22-cv-1148; 21-cr-211, 2023 WL 12033299, *2 (W.D. Pa. June 29, 2023) (quoting *United States v. Leavy*, No. 19-cr-160, 2022 WL 2829948, at *1 (W.D. Pa. July 20, 2022)), *certificate of appealability denied*, 2023 WL 12033300 (W.D. Pa. July 13, 2023), *reconsideration denied*, 2023 WL 12033301 (W.D. Pa. Sept. 18, 2023), *certificate of appealability denied*, No. 23-2488, 2023 WL 11643672 (3d Cir. Nov. 16, 2023), *cert. dismissed*, 144 S. Ct. 2649 (2024), *reconsideration denied*, 145 S. Ct. 132 (2024).  A Section 2255 petition "is the exclusive means to challenge collaterally a federal conviction or sentence."  *Frazier-el v. Bureau of Prisons*, 376 F. App'x 164, 165 (3d Cir. 2010).  However, a motion to vacate "is not a substitute for an appeal."  *Kaetz*, 2023 WL 12033299 at *2 (quoting *Gov't of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1074 (3d Cir. 1985)).

Under 28 U.S.C. § 2255, a federal prisoner[6] may move the sentencing court to vacate, set aside, or correct a sentence:

> [U]pon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]

28 U.S.C. § 2255(a).  "As a collateral challenge, a motion pursuant to 28 U.S.C. § 2255 is reviewed much less favorably than a direct appeal of the sentence."  *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (citation omitted).

In reviewing a Section 2255 motion, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record."  *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (cleaned up).  Where, as here, the petitioner files his motion pro se, the Court construes the pleadings liberally.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).  But "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation[.]"  *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000) (citation omitted).

---

[6]     Boyle is currently incarcerated at the State Correctional Institution at Phoenix and being held under a federal detainer as a result of his convictions in this case.  (ECF No. 167 at 104).  *See also* DOC Inmate Locator, https://inmatelocator.cor.pa.gov (last viewed 1/5/2026).  The record is not clear if Boyle has begun to serve his federal sentence.  The only recommendation made to the BOP by the sentencing judge was that Boyle be designated to "FCI Schuylkill or some other institution in close proximity to Philadelphia, Pennsylvania."  ECF No. 150 at 2.  There was no recommendation as to whether the federal sentence was to be served concurrently with any state sentence Boyle was serving.  Boyle however meets the federal "in custody" requirement as "courts have uniformly held that petitioners still in state custody who have yet to begin serving a consecutive federal sentence may nevertheless challenge that federal sentence[.]"  *Perry v. Warden Fort DIX FCI*, 609 F. App'x 725, 727 (3d Cir. 2015) (citing *Peyton v. Rowe*, 391 U.S. 54 (1968)).

Generally, a court must order an evidentiary hearing in a federal habeas case if a criminal defendant's § 2255 allegations raise an issue of material fact. *United States v. Biberfeld*, 957 F.2d 98, 102 (3d Cir. 1992); *see also United States v. Tolliver*, 800 F.3d 138, 140-41 (3d Cir. 2015). But, if there is "no legally cognizable claim or the factual matters raised by the motion may be susceptible of resolution through the district judge's review of the motion and records in the case[,]" the motion may be decided without a hearing. *United States v. Costanzo*, 625 F.2d 465, 470 (3d Cir. 1980); *see also Tolliver*, 800 F.3d at 140-41.

Here, the Court concludes no evidentiary hearing is warranted because, as will be explained below, the record conclusively establishes Boyle is not entitled to relief.

## IV.  DISCUSSION

Boyle brings a total of 70 claims in his § 2255 Motion, based primarily on ineffective assistance of counsel. (ECF No. 167). First, he brings a myriad of ineffective assistance of counsel claims, contending that he was afforded ineffective assistance of counsel by his pretrial and trial counsel. Next, Boyle contends he is entitled to habeas relief based on alleged trial court errors violating his Fifth Amendment right to due process and his Sixth Amendment right to effective assistance of counsel. The Government argues the claims raised by Boyle are barred by the relitigation doctrine,[7] *United States v. DeRewal*, 10 F.3d 100, 104 n.4 (3d Cir. 1993); procedurally defaulted, *United States v. Frady*, 456 U.S. 152 (1982);[8] and/or otherwise without merit. (ECF No. 175).

---

[7]    "Many cases have held that Section 2255 generally 'may not be employed to relitigate questions which were raised and considered on direct appeal.'" *United States v. DeRewal*, 10 F.3d 100, 105 (3d Cir. 1993) (citation omitted). *See also Gov't. of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985) (explaining that a section 2255 petition may not "be used to relitigate matters decided adversely on appeal").

As an initial matter, the Court finds unpersuasive the Government's arguments that procedural defects bar a number of Boyle's ineffective assistance of counsel claims. Boyle raises the majority of his claims through the filter of an ineffective assistance of counsel claim, a claim which could not have been raised during the trial or on direct appeal. And, as is discussed below, "[a] § 2255 motion is a proper and indeed the preferred vehicle for a federal prisoner to allege ineffective assistance of counsel." *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994) (citations omitted). Consequently, while the Court of Appeals may have denied the substantive claim underlying the ineffective assistance of counsel claim, it cannot be said the ineffective assistance of counsel claims are procedurally barred.

With that said, however, it is well-established that counsel cannot be ineffective for failing to raise a meritless claim. *Strickland v. Washington*, 466 U.S. 668, 691 (1984); *Ross v. Dist. Att'y of the Cnty of Allegheny*, 672 F. 3d 198, 211 n. 9 (3d Cir. 2012) ("[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim.") (quoting *Werts v. Vaughn*, 228 F.3d 178, 202 (3d Cir. 2000)). Therefore, to the extent an underlying substantive claim was found to be without merit on direct appeal, the ineffective assistance of counsel claim will be denied.

Each of Boyle's claims will be discussed in turn.

## A. Ineffective Assistance of Counsel Claims

Under the Sixth Amendment to the United States Constitution, a defendant has the right to effective assistance of counsel. *Strickland,* 466 U.S. at 690. A defendant "seeking relief on the grounds of ineffective assistance of counsel bears the burden to demonstrate two

---

[8]    Under *Frady*, claims in a habeas petition are deemed procedurally defaulted if they could have been raised on direct appeal but were not. *United States v. Frady*, 456 U.S. 152 (1982).

requirements*.*" *United States v. Seeley*, 574 F. App'x 75, 78 (3d Cir. 2014).  Under the first prong of the *Strickland* test, a defendant must establish counsel's performance was deficient. *Strickland*, 466 U.S. at 687.  This requires showing that counsel's performance fell "below an objective standard of reasonableness, 'given the particular circumstances of the case at hand.'" *Hodge v. United States*, 554 F.3d 372, 379 (3d Cir. 2009) (quoting *Strickland*, 466 U.S. at 688). And under the second prong of the *Strickland* test, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is a 'probability sufficient to undermine confidence in the outcome.'" *United States v. Hankerson*, 496 F.3d 303, 310 (3d Cir. 2007) (quoting *Strickland*, 466 U.S. at 694).

The Court of Appeals for the Third Circuit has "endorsed the practical suggestion in *Strickland* [that we may] consider the prejudice prong before examining the performance of counsel prong 'because this course of action is less burdensome to defense counsel.'" *United States v. Lilly*, 536 F.3d 190, 196 (3d Cir. 2008) (quoting *Booth*, 432 F.3d at 546), *holding modified by Vickers v. Superintendent Graterford SCI*, 858 F.3d 841 (3d Cir. 2017)); *see also Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").  The Supreme Court has emphasized that judicial scrutiny of defense counsel's performance is "highly deferential," and a "strong presumption" exists that "counsel's conduct falls within the wide range of reasonable professional assistance[.]"  *Strickland*, 466 U.S. at 689.

Keeping these standards in mind, the Court proceeds to review each of Boyle's ineffective assistance of counsel claims.

### 1.    Claims Related to Attorney Catherine C. Henry's Representation (Claims One, Two, Three, and Four)

Attorney Henry, who at the time was the Senior Litigator with the Federal Community Defender Office, represented Boyle during pretrial proceedings from April 26, 2017 to November 13, 2017, and then was reappointed on January 15, 2020 as stand-by counsel for sentencing. Boyle asserts Attorney Henry was ineffective on four grounds. Each of these claims will be denied as they are without merit.

In Claim One, Boyle claims counsel violated the attorney-client privilege by having an "improper" discussion with the court on June 14, 2017. He contends his counsel improperly revealed "privileged information to the Court or to the Government[.]" (ECF No. 167 at 92, ¶ 2). As support, he attaches the affidavits from two of his daughters in which they state they were in court on June 14, 2017, and they overheard the trial court say to AUSA Livermore, "How about this next case with Mr. Boyle. Catherine Henry and I were laughing during the lunch hour because this one is an interesting one – huh?" (ECF Nos. 167 at 111 – 114). The Court concludes this allegation is nothing more than a bald assertion grounded in nothing but speculation. As such, the claim will be denied. But because Boyle argues this claim is one of structural error, the Court will address why that argument fails.

Boyle argues "that the violation of client-attorney privilege on June 14, 2017, impinged upon his right to be tried by an impartial judge, resulting in structural error. This requires per se reversal." (ECF No. 167 at 87). Structural errors affect the framework within which the trial proceeds. *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991). Structural errors are a special category of errors that should be corrected regardless of prejudice. *United States v. Plotts*, 359 F.3d 247, 249 (3d Cir. 2004). Structural errors require reversal *per se*. *Lewis v. Pinchak*, 348

F.3d 355, 357 (3d Cir. 2003).  Structural errors have been found in a very limited class of cases: 1) a total deprivation of the right to counsel, 2) lack of an impartial trial judge; 3) unlawful exclusion of grand jurors on the basis of race; 4) denial of the right to self-representation at trial; 5) denial of the right to a public trial; and 6) an erroneous reasonable doubt instruction to the jury.  *Id*.  To the extent Boyle argues his ground for relief constitutes structural error and requires reversal per se, ECF No. 167 at 87, that argument is denied as a claim of the violation of the attorney-client privilege does not fit into any of the six classes the Court of Appeals set forth in *Lewis v. Pinchak.*

Next, in Claim Two, Boyle contends counsel was ineffective for failing to file a motion to dismiss raising alleged Speedy Trial violations.  Pursuant to the Speedy Trial Act, when a defendant pleads not guilty to an offense, his trial must commence within seventy days from the later of the filing date of the charging document or from the defendant's initial appearance on those charges (i.e., the arraignment).  *See* 18 U.S.C. § 3161(c)(1) (2006); *United States v. Tinklenberg*, 563 U.S. 647 (2011).  Boyle contends, however, "there was one hundred forty three (143) days of non-excludable delay between arrest and indictment . . . he was arrested on October 21, 2016, and indicted on April 12, 2017."  (ECF No. 167 at 11-12).  Boyle's argument is factually and legally incorrect.

Factually, Boyle was arrested on related <u>state</u> parole charges on October 21, 2016.  (ECF No. 175 at 20).  He was <u>not</u> arrested on the instant federal offenses until almost six months later on April 20, 2017, eight days after the indictment was filed on April 12, 2017.  (ECF No. 9).  And legally, the Court of Appeals for the Third Circuit has adopted the approach that "[w]hen an arrest on state charges is followed by a federal indictment, the right to a speedy trial in the federal case is triggered by the federal indictment, and the time period under consideration

13

commences on that date." *United States v. Battis*, 589 F.3d 673, 679 (3d Cir. 2009). Shortly after Boyle made his initial appearance in this case, counsel began filing motions to extend the pretrial motions deadline and the trial date, all of which tolled the Speedy Trial clock. Thus, there is no merit to this claim and Claim Two will be denied.

In Claim Three, Boyle argues counsel was ineffective for failing to file a motion to dismiss because the indictment was "fatally flawed" in that the Government had not established that the robbed banks were FDIC insured. On direct appeal, Boyle raised the underlying substantive claim that the evidence at trial was insufficient for the jury to support his convictions arguing, *inter alia*, that the Government never showed that the banks were FDIC insured. The Court of Appeals denied this claim finding that "an employee of each bank testified that the bank was FDIC-insured, and the Government introduced self-authenticating FDIC certificates of insurance." *Boyle*, 849 F. App'x at 330 (citing App. at 2213; Supp. App.at 42-82 and *United States v. Barel*, 939 F.2d 26, 38 (3d Cir. 1991)). *See also* TT, 3/12/19 at 189:20-22. Counsel cannot be found to be ineffective for failing to raise a meritless claim. *See Ross*, 672 F. 3d at 211 n.9. Thus, Claim Three will be denied.

And in Claim Four, Boyle contends counsel was ineffective for failing to file a motion to dismiss the indictment. He claims prosecutorial misconduct in violation of Fed. R. Crim. P. 6 when the Government: (i) called Detective McGee to testify before the grand jury, rather than FBI Special Agent Adam Sucheski, and (ii) by allowing Detective McGee to testify to "false statements, hearsay, and fabricated evidence."

This claim can be dismissed with little discussion. First, fatal to the claim is that Boyle fails to argue that calling Detective McGee as a witness before the grand jury resulted in a

constitutional violation.[9]  Second, Boyle raised the substantive issue challenging Detective

McGee's grand jury testimony in his post-trial motion to dismiss the indictment (ECF No. 108)

and on direct appeal.  The trial court rejected this argument finding that "[e]ven if Mr. Boyle is

correct as to any alleged error during the grand jury proceedings, that error was rendered

harmless by Mr. Boyle's subsequent conviction."  (ECF No. 130 at 8, citing *United States v.*

*Console*, 13 F.3d 641, 672 (3d Cir. 1993)) ("Even assuming [prosecutorial misconduct] occurred,

however, the petit jury's guilty verdict rendered any prosecutorial misconduct before the

indicting grand jury harmless.").  Similarly, the Court of Appeals determined "no such

prosecutorial misconduct occurred, and even if it did, it was rendered harmless under *United*

*States v. Mechanik* by his subsequent conviction by a petit jury."  *Boyle*, 849 F. App'x at 328.

For all these reasons, the Court again finds that counsel cannot be found to be ineffective

for failing to raise a non-meritorious claim.  Thus, Claim Four with its two sub-parts will be

denied.

### 2.    Claims Related to Attorney Nino V. Tinari's Representation.[10]

While Boyle alleges that each of the attorneys who represented him before the District

Court was ineffective, his primary focus is on the representation rendered by Attorney Tinari,

who represented Boyle during most of the pre-trial proceedings and all of the trial proceedings.

---

[9]    Boyle not only fails to allege a violation of the Constitution, he also does not allege a
violation of any relevant Federal Rule of Criminal Procedure or of any statute or common-law
rule governing grand juries.  *See United States v. Williams*, 504 U.S. 36, 46 n.6 (1992) (listing
rules that apply to grand jury proceedings).

[10]    For organizational purposes, the Court has grouped various claims by common operative
issues and has organized the claims by first addressing pre-trial issues, then trial issues, and
finally post-trial issues, rather than addressing the claims in a numerical fashion.

Boyle asserts Attorney Tinari was ineffective on sixty-three grounds.[11]  Each of these claims is addressed in turn.

### i. Claims Regarding Representation During Pre-Trial Phase

### Claim Five – Failure to File a Motion to Sever

Boyle first argues Attorney Tinari was ineffective for not filing a motion to sever the counts relating to the various robberies.  According to Boyle, "the robberies were dissimilar and that some were committed over one (1) year apart in time."  (ECF No. 167 at 19).

Had counsel filed such a motion, its disposition would have been governed by Fed. R. Crim. P. (8)(a) and 14(a):

> The Federal Rules of Criminal Procedure allow charging multiple offenses in separate counts of a single indictment if the offenses charged "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."  Fed.R.Crim.P. 8(a).  The Federal Rules of Criminal Procedure also states: "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed.R.Crim.P. 14(a).  "[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  *Zafiro v. U.S.*, 506 U.S. 534, 539 (1993).

*Melter v. United States*, Crim No. 13-12 Erie, 2016 WL 7163591, at *13 (W.D. Pa. Dec. 7, 2016).  Our Court of Appeals has noted that "[t]he obvious purpose of Rule 8(a)'s liberal joinder

---

[11]    The Court notes in the vast majority of these claims Boyle takes umbrage because, although he "instructed" counsel to take certain action, counsel failed to follow his or his family's instructions.

provision is to promote judicial and prosecutorial economy by the avoidance of multiple trials." *United States v. Niederberger*, 580 F.2d 63, 66 (3d Cir. 1978).

Here, the Government alleged that each of the eleven bank robberies committed by Boyle was part of the same common scheme or plan. For example, the Government explained, "[h]e would often wear two sets of clothes, including a hat, jacket, and tie. He always covered his face and left his mobile phone at home. He always targeted banks within twenty miles of his home." *Boyle*, 849 F. App'x at 328.

In view of the characteristics of the robberies, Attorney Tinari's decision to forego filing a motion to sever the charges easily falls within the wide range of strategic decisions that trial counsel is entitled to make. The Court concludes that counsel's failure to file a motion for severance was not the result of deficient performance nor did it result in any prejudice to Boyle. For this reason, Claim Five will be denied.

### Claims Six, Seven, Eight, Ten, and Twelve – Failure to Investigate, Failure to Subpoena Documentation

In this group of claims, Boyle contends his defense counsel failed to follow through on certain discovery items or failed to investigate his alibi defense as he and his family had requested. All five claims will be dismissed as they are vague, conclusory, and unsupported by facts and Boyle fails to show how any of this alleged conduct on the part of defense counsel prejudiced him.

First, in Claim Six, Boyle claims counsel did not investigate or subpoena "critical sources of potentially exculpatory evidence." (ECF No. 167 at 20). Attached to the petition is an email from Boyle to his defense counsel dated 4/20/18 requesting counsel to obtain from the Government all the state/local investigative files pertaining to the eleven charged bank robberies.

(ECF No. 167, Exh. F).  The Government represents that all the items requested in Boyle's email were in fact produced and given to defense counsel and the record reflects that defense counsel used these files to cross-examine the Government's witnesses at trial.  Claim Six will be denied as it is unsupported by the record.

Next, in Claim Seven, Boyle contends that counsel failed to investigate his alibi defense. To support this assertion, Boyle attaches an email exchange between him and defense counsel. (ECF No. 167 at 126, Exh. E).  When asked by counsel if he had an alibi for any of the eleven charged bank robberies, Boyle replied that "without access to my business or personal calendar," he could not say if had an alibi for ten of the bank robberies, but he recalled that on the date of the last robbery, he went to a pet store and then to a field to perform test flights with a drone and then returned home "shortly after the time of the alleged incident."  *Id.*  Counsel then asked for more specifics and Boyle replied, "I went to P&A Pet Feed Store in Doylestown and bought a 30LB bag of Ukaneube dog food.  No one, other than my dog, was with me that Saturday morning."  *Id.*  Boyle has failed to demonstrate how counsel was deficient in investigating his alibi defense when, as Boyle admits, his only witness was his dog.[12]  Claim Seven will be denied as Boyle has failed to satisfy either prong of the *Strickland* test.

Next up is Claim Eight wherein Boyle claims that counsel failed to investigate the "many discrepancies and substantial differences in the eleven (11) bank robberies charged[.]"  ECF No. 167 at 22.  Boyle, however, has failed to identify what, if anything, his counsel should have done

---

[12]    The Court notes that on direct examination when asked if he committed any of the eleven robberies, he responded,  "No, I did not.  I was not at any of those places and I did not commit those robberies.  Absolutely did not."  TT, 3/19/19, at 22:16-18 (ECF No. 115).

to "investigate" these "discrepancies."  Claim Eight will be denied as Boyle has failed to satisfy either prong of the *Strickland* test.

And in his final two grounds for relief in this group, Boyle argues counsel failed to follow through on a number of things he wanted counsel to do (Claim Ten) and failed to subpoena Parole Agent Welch's phone and email records from June 1, 2016 - November 1, 2016 (Claim Twelve).  Fatal to both this claims, however, is Boyle has not shown that had counsel followed through on Boyle's requests, there is a "reasonable probability that, . . . the result of the proceeding would have been different." S*trickland*, 466 U.S. at 694.  Claims Ten and Twelve will be denied on this basis.

### Claim Nine -  Failure to File A Motion to Compel

Here, Boyle claims Attorney Tinari was ineffective for not filing a motion to compel the Bucks County District Attorney's Office to produce Search Warrant Control Number 4321500112A.  According to Boyle, two Bucks County search warrants were included in the discovery material produced by the Government – Control Numbers 4321500112B and 4321500112C – and when counsel requested Control Number 4321500112A, he was informed by AUSA Livermore that the warrant did not exist.  (ECF No. 167 at 23).  However, when Boyle's "daughter went to the Clerk of Court's office in the Bucks County Courthouse to request a copy of #4321500112A[,] the Clerk informed her that warrant #4321500112A was under seal." *Id*.  Boyle contends  "[t]his warrant would demonstrate that Detective McGee was aware of Petitioner's identity prior to October 17, 2016, and that the allegations he made against Petitioner were false." *Id*.

The Government responds the two search warrants produced in discovery were for the search of Boyle's home and truck and the Government did not offer evidence from any other search on that date.  (ECF No. 175 at 26).

The Court concludes Claim Nine should be denied as Boyle's allegation is vague, conclusory, and unsupported by facts and has failed to show how this conduct on the part of defense counsel prejudiced him.

### Claim Eleven – Failure to Collaborate With Investigator and Pursue Additional Discovery

According to Boyle, his family retained a private investigator, Kerry Tucker, and counsel failed to collaborate with the investigator to obtain certain discovery items, resulting in prejudice because counsel's failure to "investigate exculpatory evidence that would exonerate Petitioner led to conviction."  (ECF No. 167 at 93).  Boyle provides a non-exhaustive list of tasks he or his family requested which counsel failed to do.  *Id*. at 25.

"Counsel for a defendant need not follow the strategy recommendations of their client and must only exercise reasonable professional judgment."  *United States v. Senke*, No. 3:16-cv-CR-00373, 2023 WL 7647295, at *12 (M.D. Pa. Nov. 14, 2023), *certificate of appealability denied*, No. 23-3236, 2024 WL 3027442 (3d Cir. Mar. 28, 2024).  The Court is left to speculate as to the relevance of the requested tasks or discovery items as Boyle makes no attempt to explain how the tasks and discovery he wanted counsel to obtain are relevant or material to his case, or how any of the desired items would be exculpatory.  Prejudice resulting from ineffective assistance of counsel cannot be based on mere speculation.  Thus, the Court cannot conclude that Boyle was prejudiced by counsel's failure to collaborate with the investigator as Boyle has failed to provide any supporting documentation detailing what the documents would have said.

20

**Claims Thirteen and Twenty-One – Failure to Argue Merits of
Request for *Franks* hearing**

In Claim Thirteen, Boyle argues counsel was ineffective in failing to argue the merits of

his *Franks* motion at a hearing on May 1, 2018.  (ECF No. 175 at 27).[13]  This claim will be

denied as it is not supported by the record.

On March 22, 2018, the trial court held an evidentiary hearing and argument on the

*Franks* motion, as well as other various pretrial motions.  At the conclusion of that proceeding,

the court denied without prejudice the *Franks* motion.  *See* Tr. of Motion Hearing, 3/22/2018,

27:16-25 (ECF No. 71).  On May 1, 2018, the court resumed the hearing on the various pretrial

motions and, at the request of defense counsel, reopened the record on the *Franks* motion.  *See*

Tr. of Motion Hearing, 5/1/2018, at 3:13; 20:19; 20:22; 20:24, and 46:7 (ECF No. 42).  At the

conclusion of the May 1, 2018 proceeding, the court denied "the defense motion that attacks both

the probable cause affidavit and requests any further hearing on that issue."  Tr. of Motion

hearing, 5/1/2018, at 46:7.  The ruling from the bench was followed by a written order issued on

May 1, 2018.  (ECF No. 38).  Boyle's claim that counsel failed to argue the merits of the *Franks*

motions at the May 1, 2018 hearing is simply not supported by the record and for that reason will

be denied.[14]

---

[13]     The difficulty with Boyle's contention is that he does not articulate what additional
arguments or evidence defense counsel should have introduced at the *Franks* hearing to attack
Detective McGee's veracity.  Absent such specificity, Boyle has not established that defense
counsel's conduct at the *Franks* hearing fell below an objective standard of reasonableness or
that this conduct by defense counsel prejudiced him.

[14]     The Court notes that on November 20, 2018, defense counsel filed a second motion for a
*Franks* hearing. (ECF No. 65).  The trial court denied the second motion finding the arguments
were substantially a repetition of the initial *Franks* application and the arguments had previously
been evaluated and rejected by the court.  (ECF No. 74).

In Claim Twenty-One, Boyle states that after the court denied his second motion for a *Franks* hearing, he instructed his counsel to file a motion to suppress challenging the allegedly false statements made in the affidavit of probable cause. Counsel did not file the motion and, as a result, Boyle contends he was prejudiced because "he would not have been convicted if defense counsel used the evidence that proves the affidavit of probable cause was invalid and the evidence was seized in violation of the Fourth Amendment." (ECF No. 167 at 94).

Attorney Tinari's decision to forego filing a motion to suppress easily falls within the wide range of strategic decisions that trial counsel is entitled to make. The trial court had twice denied the defense motions for a *Franks* hearing based on the allegedly false statements in the affidavit of probable cause and counsel would have been acting well within professional discretion to conclude that a motion to suppress on the same grounds would have been denied. The Court concludes that counsel's failure to file a motion to suppress to once again challenge the affidavit of probable cause was not the result of deficient performance nor did it result in any prejudice to Boyle. For this reason, Claim Twenty-One will be denied.

Furthermore, on direct appeal, Boyle argued the affidavit in support of a search warrant executed at his home contained false statements or omissions. The Court of Appeals determined the record refuted Boyle's claims:

> The affidavit included information about the Tracfone used at the library and the identification of Boyle by a confidential informant who then positively identified photos of Boyle at the library on the day the phone was activated. . . . He also claims that no evidence shows that Boyle used the computer at the library. The record refutes these claims. The government received, and presented at trial, an e-mail from Tracfone with an IP address associated with the library. . . . And two witnesses present at the library - one of whom testified at trial - stated that Boyle had asked them how to access a computer.

*Boyle*, 849 F. App'x at 329.  The Court of Appeals concluded Boyle had "not made a 'substantial preliminary showing'" that Detective McGee knowingly or recklessly lied in his search warrant affidavit and the District Court properly rejected Boyle's motion for a *Franks* hearing.  *Id.* *(quoting United States v. Yusuf,* 461 F.3d 374, 383 (3d Cir. 2006))*.  Counsel cannot be ineffective for failing to raise a meritless claim.  *See Ross*, 672 F. 3d at 211 n.9.

**Claims Fourteen, Twenty-Eight, Thirty, Thirty-One, Thirty-Two, Thirty-Three, Thirty-Four, and Thirty-Five Failure to Appropriately Argue Against Admission of Fed. R. Evid. 404(b) Evidence[15]**

Similar to the claim raised in Claim Thirteen, Boyle argues in Claim Fourteen that counsel was ineffective in failing to appropriately argue against the Government's motion to introduce evidence pursuant to Fed. R. Evid. 404(b).  This claim too will be denied as it is not supported by the record.  As noted above, the trial court held arguments on the various pretrial motions on March 22, 2018 and May 1, 2018.  The undisputed record shows that defense counsel filed a response to the Government's motion, ECF No. 33, and argued against the admission of this evidence during the hearings on pretrial motions.  Because Boyle's argument is not supported by the record, Claim Fourteen will be denied.

Relatedly, in Claims Twenty-Eight, Thirty, Thirty-One, Thirty-Two, Thirty-Three, and Thirty-Four, Boyle asserts various arguments, including counsel failed to object to the admission of the Government's 404(b) evidence on hearsay and relevancy grounds, and failed to move to strike or move for a mistrial during the testimony of Trooper Greg Dietz concerning Boyle's prior robbery convictions.  And in Claim Thirty-Five, Boyle contends counsel did not object to

---

[15]    The Government sought to admit evidence of "Richard Boyle's prior convictions in Montgomery County for bank robbery," and "any information provided by defendant RICHARD BOYLE to the parole board or to his parole officer."  (ECF No. 22).

the Court's "confusing and contradictory limiting instructions read to the jury pursuant to 404(b)." (ECF No. 167 at 49). Boyle challenged on direct appeal the underlying substantive claim regarding the admission of the Fed. R. Evid. 404(b) evidence and the Court of Appeals rejected his claims.

On direct appeal, Boyle argued the Government had introduced prejudicial evidence about his prior criminal activity and challenged the District Court's decision to allow such evidence under Rule 404(b) of the Rules of Evidence. The Court of Appeals rejected the argument stating:

> Here, the Government used evidence of Boyle's earlier bank robberies for proper purposes, such as motive, preparation, and identity. And the District Court's multiple limiting instructions - whose language Boyle's counsel never objected to - cured any prejudicial effect. In his 2008 sentencing, Boyle admitted that he committed the robberies because he needed money to make car payments, pay tuition, and buy photography equipment. So here too. . . . As the District Court correctly held, Rule 404(b)(2) expressly permits admission of other-acts evidence for, among other things, "proving motive." Fed. R. Evid. 404(b)(2).
>
> Boyle, as the Government explained, used many of the same techniques in both sets of robberies. He would often wear two sets of clothes, including a hat, jacket, and tie. He always covered his face and left his mobile phone at home. He always targeted banks within 20 miles of his home. "[P]reparation" and "identity" are both proper nonpropensity purposes under rule 404(b)(2), and both properly identified by the District Court in its decision. Boyle complains that the evidence was more prejudicial than probative, but the District Court minimized that risk with repeated limiting instructions. . . . Boyle's counsel declined to submit alternative instructions or supplement the ones given, and he raised no concerns. And, as the District Court noted, both parties correctly commented on the limited purpose of the evidence in their closing arguments. On balance, admitting this evidence was not error.

*Boyle*, 849 F. App'x at 328. As there was no underlying constitutional violation in the admission of the Fed. R. Evid. 404(b) evidence, Boyle's claims of ineffective assistance of counsel must

fail.  Accordingly, Claims Twenty-Eight, Thirty, Thirty-Two, Thirty-Three, Thirty-Four, and Thirty-Five will be denied.

**Claim Fifteen – Failure to Place on Record that District Court Judge
Attempted to Coerce Petitioner to Plead Guilty**

This claim impugns the trial court on the basis of little more than speculation.  There is absolutely no evidence in the record that the trial court attempted to coerce Boyle into pleading guilty.  Rather, Boyle relies on a comment the trial court made to counsel after granting the Government's request to admit Fed. R. Evid. 404(b) evidence to discuss "strategy"[16] and an email from AUSA Livermore to Attorney Tinari attempting to "gaug[e] Mr. Boyle's interest in coming back to the bargaining table."  (ECF No. 167, Exh. J).  A communication between the prosecution and defense counsel on the topic of a potential plea agreement is not only not impermissible, but is part of the give and take of federal criminal trial practice in any case, and in any event, does not implicate the Court at all.  Claim Fifteen will be denied as the record is devoid of any evidence supporting Boyle's argument that the court attempted to coerce him to plead guilty and, therefore, there was nothing for counsel to place on the record.

---

[16]    Specifically, Boyle seems to be relying on the following comment made by the trial court:  "It's always important for counsel, both the Government's counsel and defense counsel, to work on trial strategy as the trial date looms.  My experience is that people tend to change their plans or at least modify their plans when we have a date and that's certainly something that you and Mr. Livermore can confer about."  *See* ECF No. 167, Exh. I; Tr. of Motions Hearing, 45:6-11.

### ii. Claims Regarding Representation During Trial

**Claim Sixteen – Failure to Move to Strike Two Jurors**

Boyle asserts counsel was ineffective for failing to strike two jurors who stated during voir dire they had family members who worked for banks.[17]  The transcript from the jury selection procedure reflects the trial judge asked both Juror 30 and Juror 32 whether having a family member who worked at a bank would affect their ability to be fair and impartial, and both jurors answered that they did not think so.  *See* TT, 3/1/2019 at 117:20, 118:1-14; and 124:8-22. (ECF No. 112-1).  Boyle has not presented any factual basis for his claim that these jurors could not be fair and impartial, or that they were required to be stricken from the panel for cause, or that defense counsel's strategic decisions as to the exercise of peremptory strikes was outside of the broad discretion accorded trial counsel.  Accordingly, counsel was not constitutionally deficient in failing to strike these jurors and Claim Sixteen will be denied.

**Claim Seventeen – Counsel Failed to Retain Expert Witnesses**

Boyle claims that counsel failed to retain a forensic financial expert, a forensic cell site location information ("CSLI") expert, and an investigator "after coercing Petitioner's family to install a houseful of carpeting in his daughter's home[.]"  (ECF No. 167 at 31).[18]  Boyle contends the experts would have strengthened his defense at trial:  the testimony from the forensic financial expert would have impeached the Government's theories and testimony from the CSLI

---

[17]     Boyle does not identify the two jurors, but in reviewing the transcript from Jury Selection, ECF Nos. 112 and 112-1, the Court concludes Boyle is referencing juror number 30, who stated his wife was a bank teller (TT, 3/1/2019, at 117:20, ECF No. 112-1) and juror number 32, who stated a family member worked at a bank.  *Id.*, 124:8.

[18]     To the extent this claim involves a fee dispute, such a claim is non-cognizable on habeas review.

expert would have exonerated Boyle.  He provides no information about who these witnesses are or what the nature of their proposed testimony would have been.

His contention amounts to nothing more than mere speculation and, as stated above, prejudice resulting from ineffective assistance of counsel cannot be based on mere speculation. Boyle has not shown that, had trial counsel called these witnesses, there is a "reasonable probability that, . . . the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  As such, Claim Seventeen will be denied.

### Claims Eighteen, Twenty, Fifty-Seven, and Fifty-Eight
### Failure to Prepare for Trial, Failure to Put On Affirmative Defense

In Claim Eighteen, Boyle contends counsel failed to gather and prepare any defense exhibits for trial.  This argument is belied by the record.  The record reflects defense counsel marked and introduced a number of exhibits during his cross-examinations of Government witnesses Eric Warton, Abigail Boyle, Detective McGee, and FBI Special Agent Yeager (Exhibits D2, D3-10, D11, D12-14, D15, D16, and D17A through F).  And during the defense case in chief, a series of emails between Boyle and his parole agent and business emails were marked and introduced through the testimony of Boyle's daughter, Haley Coolbaugh. (D21 and D22).  This claim will be denied as it is contrary to the record.

In Claim Twenty, Boyle claims counsel was ineffective because Boyle was "required" to write the attorney's opening statement for trial.  Boyle claims, he "wrote it, called his daughter on the FDC phone system, dictated it to her during the course of several phone calls, she typed it, then sent it by e-mail to Attorney Tinari.  Attorney Tinari read it to the jury during opening statements on March 4, 2019."  (ECF No. 167 at 34).  Boyle makes a similar claim in Claim Fifty-Eight claiming he also wrote the closing argument and his daughter prepared a PowerPoint

presentation for use during summation. *Id*. at 72. Even assuming these claims are accurate, Boyle has not established that counsel's performance in either his opening statement or closing summation was deficient; thus, these claims will be denied.

And the last claim in this group, Claim Fifty-Seven also will be denied. Boyle contends defense counsel failed to put on an "affirmative defense." (ECF No. 167 at 71). Boyle once again finds fault because counsel did not follow Boyle's "dozens of e-mail messages instructing Attorney Tinari" to investigate alibi evidence, investigate and subpoena witnesses, and acquire discovery materials for use as defense exhibits. *Id*. The fundamental flaw in this claim is that Boyle has not shown "a reasonable likelihood that . . . information [not presented] would have dictated a different trial strategy or led to a different result at trial." *Lewis v. Mazurkiewicz*, 915 F.2d 106, 115 (3d Cir. 1990). Without such a showing, counsel cannot be found to be ineffective under the *Strickland* standard. Claim Fifty-Seven will be denied.

### Claims Nineteen, Twenty-Nine, Thirty-Nine, Forty, Forty-One, Forty-Two
### Failure to Effectively Cross Examine / Impeach Witnesses

In Claims Nineteen, Twenty-Nine, Thirty-Nine, and Forty, Boyle claims counsel was ineffective in failing to effectively cross examine witnesses. Each of these claims will be denied for the following reasons.

First, Boyle contends defense counsel failed to effectively cross examine Laurie F. Tynan,[19] about a "diversionary" call she received at the Horsham Township Library on June 8, 2012. (Claim Nineteen). According to Boyle, Ms. Tynan testified the call came in several hours before the robbery at Colonial American Bank occurred.

---

[19]    Ms. Tynan retired as Director of the Horsham Township Library in August 2016. *See* TT, 3/4/2019, 124:13-14.

The transcript reflects Ms. Tynan testified the call came in to the library "probably the early part of the afternoon." TT, 3/4/2019, at 125:7-10. On cross examination, she testified the call came in "[a]ny time between 12 and 3 or 12 and 4." *Id*. at 131:13-14.[20] The witness's testimony was based on her recollection of a call she received almost six years prior to her trial testimony. The Court concludes defense counsel succeeded in having Ms. Tynan narrow the time frame of the call during cross examination, and Boyle does not show how that cross examination was ineffective, or more precisely, prejudicially ineffective. The Court concludes that this Claim is without merit.

Next, Boyle contends defense counsel failed to effectively cross examine Pennsylvania State Trooper Greg Dietz about the "substantive and material difference in the crimes" between the 2008 robberies he investigated and the 2012-2016 robberies. (Claim Twenty-Nine). This claim is not supported by the record. During his cross examination of this witness, defense counsel pointed out several differences: (i) Boyle wore a baseball cap in the 2008 robberies, but the bank robber did not in the 2012-16 robberies; (ii) Boyle did not cover his hands in the 2008 robberies as the robber did in the 2012-16 robberies; and (iii) Boyle wore different clothes in the 2008 robberies than the robber did in the 2012-16 robberies. *See* TT, 3/4/19 at 193.

Third, Boyle contends defense counsel failed to effectively cross examine Philadelphia Police Detective Anthony Vega (Claims Thirty-Nine and Forty). In essence, Boyle is objecting to the Government calling Detective Vega as an expert on cell site analysis rather than calling FBI Special Agent William Shute. Detective Vega was properly qualified to testify as a cell site

---

[20]    Patrol Lieutenant Lawrence E. Bozzomo, with the Horsham Township police department, testified the police department received a call about the Colonial American Bank robbery approximately at 5:40 PM. *See* TT, 3/4/2019, at 111:13-18.

expert.  *See* TT, 3/8/19, at 156:1 – 160:6.  There was no reasonable basis upon which counsel could have or should have cross examined Detective Vega on why another individual was not called as the Government's cell site analysis expert.  In Claim Forty, Boyle claims defense counsel was ineffective for failing to effectively cross examine Detective Vega about why certain individuals were excluded as suspects and has proposed additional questions which he contends counsel should have asked.  Boyle has not shown that had defense counsel asked these questions, there is a "reasonable probability that, . . . the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.

And in Claim Forty-Two, Boyle contends defense counsel was ineffective in failing to cross examine FBI Special Agent Matthew Yeager about Boyle being excluded as a suspect.  The problem with this claim is that there is no record evidence that Boyle was ever <u>excluded</u> as a suspect.  Rather, SA Yaeger testified a tip came into the FBI internet message board in April 2013, but the agents handling the case at the time elected not to follow up as "[i]t was just sort of supposition[.]"  TT, 3/12/19, at 210 – 211.

After having reviewed the record, the Court cannot find a reasonable probability that but for counsel's failure to cross examine any of these witnesses as Boyle suggests, the outcome of the trial would have been different.

And last, in Claim Forty-One, Boyle claims defense counsel failed to impeach SA Yeager's testimony about the surveillance videos from any of the robberies.  On direct examination, SA Yeager testified he had edited the surveillance videos to make a compilation video for each bank robbery.  *See* TT, 3/4/19, at 45:25 – 46:1-6.  There was nothing for defense counsel to "impeach" on cross examination.  Thus, counsel's conduct was not deficient and

Boyle did not suffer any prejudice from the jury viewing only the relevant / edited portions of the surveillance videos.

### Claims Fifty-Five and Fifty-Six
### Failed to Elicit Testimony from Defense Witnesses

In Claim Fifty-Five, Boyle contends his counsel was ineffective for failing to ask questions about the source of Boyle's income and the fact that Boyle "had never in his whole life, ever purchased, possessed, used, or condoned the use of any type of firearm." The record reflects Boyle is incorrect on both accounts. Boyle actually testified at length about his legitimate income on both direct and cross examination. *See* TT, 3/13/19, at 17:6 - 22:11, 25:21 -39:12. And Boyle testified he shot firearms during his military service and qualified as an expert. *Id*. at 74:12-13. Thus, this claim will be denied.

In Claim Fifty-Six, Boyle contends his counsel was ineffective for failing to elicit during the direct examination of Haley Coolbaugh, Boyle's daughter, testimony in support of Boyle's innocence. He suggests that if counsel had asked Ms. Coolbaugh about the "continuous police presence" outside the Boyle home after July 2, 2016, and the change in attitude of Boyle's state parole officer, her answers would have supported Boyle's claims of innocence and would have "refute[d] the Government's contention that Petitioner was not a suspect until after the alleged "Confidential Source" (Susan Bray) contacted the FBI tip line after seeing the 6ABC News story on October 17, 2016." The Court is left to speculate as to what Ms. Coolbaugh's testimony would have been as Boyle has failed to provide any supporting documentation, in the form of an affidavit or otherwise, detailing what Ms. Coolbaugh would have said during her trial testimony. The Court cannot conclude on this record that Boyle was prejudiced by counsel's failure to ask these additional questions of Ms. Coolbaugh. Prejudice resulting from ineffective assistance of

counsel cannot be based on mere speculation as to what witnesses might have said. *Duncan v. Morton*, 256 F.3d 189, 201–02 (3d Cir. 2001).

**Claims Twenty-Two, Twenty-Three, Twenty-Four,
Twenty-Five, and Thirty-Eight
Claims Regarding Admission of Evidence Re: Tracfone Records**

This group of claims involves the introduction of the Tracfone business records into evidence and defense counsel's alleged failure to contest their admissibility. These records were used by the Government to show that Boyle purchased a Tracfone and that he activated the phone on June 27, 2016, using a computer at the Bucks County Free library system. *See* TT, 3/11/19 at 67:9-13.

The record reflects the Government sought to introduce these records through a business records certification. Defense counsel initially objected and stated, "I need to know how they get this and from whom and how." TT, 3/4/19 at 84:6-7. At the court's direction, the Government provided defense counsel with a copy of the email from Tracfone which attached the business records and a copy of the certification. *Id*. at 84:17. After reviewing those documents during the lunch break, defense counsel stated to the Court, "We'll have no objection to its admission." *Id*. at 86:5-6.

Boyle complains that counsel made this decision outside his presence (Claim Twenty-Two) and without his consent (Claim Twenty-Three). He contends the Tracfone records are "fabricated evidence," (Claim Twenty-Four), to which his counsel failed to object (Claim Twenty-Five), and there is no evidence that a Tracfone was activated at the Warminster Library, and counsel was ineffective for not moving to suppress any trial testimony relating to the Tracfone being activated at the Warminster Library. (Claim Thirty-Eight).

Boyle has failed to show his counsel's performance was deficient in any of these respects. Counsel reviewed the proposed exhibit and the evidentiary foundation over the lunch hour as ordered by the court. The records, as the certification showed, were obvious business records and, as such, admissible under Federal Rule of Evidence 803(6)(A)-(C) and 902(11) under the business records exception to the rule against the use of hearsay evidence. Thus, even if defense counsel would have objected, the objection would have been overruled and the records admitted by the court.

Likewise, there were no grounds for counsel to move to suppress any testimony regarding the Tracfone being activated at the Warminster Library. The testimony at trial revealed a diversionary call was placed prior to the last bank robbery on July 2, 2016. That call was placed using a prepaid Tracfone phone and, according to Tracfone's business records, that phone was activated at a Bucks County Library branch. *See* TT, 3/11/19, at 67:10-11. The FBI then collected video from the Bucks County Library and after reviewing these videos, determined the Tracfone used in making the diversionary call was activated during the time Boyle was inside the Warminster library branch. *Id.*, 69:6-25.

At trial, the Government admitted the business records from Tracfone and the library surveillance video, all of which were properly admitted under the Federal Rules of Evidence. There were no grounds for defense counsel to object to either the Tracfone records or the library surveillance videos as they had been properly admitted under the Federal Rules of Evidence.[21] Claim Thirty-Eight will be denied for these reasons.

---

[21]    The Court notes that if Boyle had raised a claim that the evidence was admitted improperly, such claim is waived, as an evidentiary violation must be raised on appeal, not through a collateral attack on habeas review. *See United States v. Frady*, 456 U.S. 152, 162-63 (1982).

**Claims Thirty-Six, Thirty-Seven, Claims Forty-Four – Fifty,
Inclusive – Claims Relating to the Testimony of Detective McGee**

Detective Jeffrey Michael McGee, Sr., has been a detective with the Plymouth Township
Police Department since 1987 and a FBI Task Force officer since 2015.  *See* TT, 3/11/19 at
30:18 – 31:17.  He did not get involved in actively investigating this string of robberies until July
2, 2016, after the last robbery was committed; however, he was assigned as lead detective to the
Wells Fargo Bank robbery which occurred on January 6, 2015.  *Id*., 33:23-24 – 34:1-9.  In his
petition, Boyle highlights a number of alleged deficiencies in the treatment of Detective McGee
by his trial counsel.[22]  Each will be addressed in turn.

In Claim Thirty-Six, Boyle claims counsel was ineffective when he failed to object to the
"false and fabricated testimony" concerning an "old man mask."  The Government presented
evidence that Boyle had purchased an "old man mask."  TT, 3/12/19 at 45:21.  Defense counsel
extensively cross examined Detective McGee on this subject and he admitted there were no
supplemental reports that talked about an "old man mask."  *Id*. at 140:3-16.[23]  To the extent
Boyle is arguing counsel was ineffective for not objecting to the government's inference, the
district court instructed the jury both parties are permitted to ask the jury to make inferences

---

[22]    On direct appeal, Boyle's claims that Detective McGee fabricated evidence and lied to
the grand jury were denied.  *United States v. Boyle*, 849 F. App'x 325, 329-30 (3d Cir. 2021)

[23]    Before the grand jury, Detective McGee testified that Kyung Lee, a witness to the PNC
bank robbery, reported that the bank robber was wearing an "old man" mask, when in fact she
did not report that.  As the Court of Appeals found though, "it is unclear why Detective McGee's
misstatement matters. The grand jury reviewed photos showing that the person who robbed PNC
was wearing a mask.  Lee never singled out Boyle as the robber.  And McGee did not claim that
she did."  *Boyle*, 849 F. App'x at 329.

from the evidence.  *See* TT, 3/14/19, at 8:21:25 – 9:1-7.  There was no basis upon which defense counsel could make an objection.

A similar claim is made by Boyle in Claim Thirty-Seven, in which he contends counsel was ineffective for failing to object to "false and fabricated testimony" concerning an "earpiece." Here too, the Government presented evidence that Boyle had purchased an "earpiece" on Amazon and then compared the earpiece purchased with a still photograph taken from one of the robberies and suggested that Boyle was wearing this earpiece during the robbery.  *See* TT, 3/11/19, at 110:18:21; TT, 3/12/19 at 10:6-7.  Again, parties are permitted to ask the jury make inferences from the evidence.  There was no basis upon which defense counsel could make an objection.[24]

Claims Forty-Four and Fifty concern defense counsel's impeachment of Detective McGee.  Specifically, Boyle claims defense counsel was ineffective because he failed to cross examine / impeach Detective McGee about the Tracfone data (Claims Forty-Four, Forty-Six, Forty-Seven, and Forty-Nine), Detective McGee's replacing FBI Special Agent Adam Sucheski as the lead investigator (Claim Forty-Five), his grand jury testimony (Claim Forty-Eight), and his alleged inconsistent statements made on direct examination (Claim Fifty).

These arguments are not supported by the record.  Defense counsel thoroughly and strenuously cross-examined Detective McGee on many different subjects, including some suggested by Boyle in his petition.  The record reflects Detective McGee was cross examined about the Tracfone data (TT, 3/12/19 at 133), his grand jury testimony (*id*. at 135), and the

---

[24]    To the extent Boyle may be arguing that the Court committed an evidentiary error, such a claim must be raised on appeal, not through a collateral attack on habeas review.  *See Frady*, 456 U.S. at 162-63.

discrepancy in his testimony about Kyung Lee's witness statement (*id*. at 95).  Witness

examination methods fall within the realm of trial strategy and necessitate a strong level of

deference to the attorney's decisions.  *Diggs v. Owens*, 833 F.2d 439, 444-45 (3d Cir. 1987) ("An

attorney is presumed to possess skill and knowledge in sufficient degree to preserve the

reliability of the adversarial process and afford his client the benefit of a fair trial.")  The subject

matters covered during cross examination and the amount of questions presented on each subject

fall within the sound discretion of defense.  Boyle has not shown that counsel's conduct fell

below the "wide range of reasonable professional assistance[,]"  *Strickland*, 466 U.S. at 689, or

that with additional cross examination there is a reasonable probability of a different outcome.

### Claim Fifty-One – Failure to Obtain Surveillance Video

Boyle claims his counsel failed to obtain the July 2, 2016, surveillance video from PNC

Bank, which could have been used to impeach the grand jury testimony of Detective McGee.

The Government responds, "[t]his is not true" as the FBI obtained all available video from the

bank and all that video was turned over to defense counsel in discovery.  (ECF No. 175 at 41).

The Court has no reason to conclude that this video was not turned over in discovery or, more

importantly, how it would have or rationally could have changed the outcome of the trial, and,

therefore will deny Claim Fifty-One.

### Claims Fifty-Two, Fifty-Three, and Fifty-Four
### Failure to Call Witnesses

Here, Boyle argues counsel was deficient in failing to call as witnesses Susan Brax

(Claim Fifty-Two), Megan LNU from the Subpoena Compliance Department at Tracfone (Claim

Fifty-Three), and Kyung Lee, an eyewitness at the bank robbery on July 2, 2026 at PNC Bank

(Claim Fifty-Four).

Witness selection is "among the non-fundamental decisions that counsel is entitled to make at trial." *Government of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1434 (3d Cir. 1996). Moreover, federal courts generally "will not second-guess tactical decisions of counsel in deciding whether to call certain witnesses." *See id*. (internal quotation marks omitted); *see also Henderson v. DiGuglielmo*, 138 F. App'x 463, 469 (3d Cir. 2005) (counsel's failure to call a witness is precisely the sort of strategic trial decision that *Strickland* protects from second-guessing (internal quotation marks omitted)); *Duncan*, 256 F.3d at 201; *United States v. Pungitore*, 965 F. Supp. 666, 674 (E.D. Pa. 1997) *aff'd*, 172 F.3d 861 (3d Cir. 1998) (witness decisions are strategic and "attorneys are not required to call every witness suggested to them[.]"). And our Court of Appeals has instructed that counsel's trial strategy must be viewed with great deference. *Gaines v. Superintendent Benner Twp*. SCI, 33 F.4th 705, 712 (3d Cir. 2022).

Even assuming counsel should have called a certain witness to testify, Boyle must show "a reasonable likelihood that . . . information [not presented] would have dictated a different trial strategy or led to a different result at trial. *Lewis*, 915 F.2d at 115. And he must establish prejudice by showing what the testimony would have been and that it could have been elicited. Otherwise, the prejudice prong under *Strickland* is not satisfied. *United States v. Edwards*, No. Crim. 96-592, 2000 WL 572704, at *5 (E.D. Pa. May 8, 2000). Boyle has not made such a showing. *See United States v. Throckmorton*, Nos. 02:05-cr-0219, 2009 WL 3465111, at *6 (W.D. Pa. Oct. 22, 2009) (McVerry, J.) (petitioner's claims about purported testimony are "completely unsupported" where he "offered no evidence to substantiate his claims that [a witness] would have testified or to the subject matter" of the testimony.) Therefore, Claims Fifty-Two, Fifty-Three, and Fifty-Four will be denied.

### Claims Sixty-Three and Sixty-Four – Failure to Object to Admission of Photograph of BMW Car and Financial Summary Chart

In Claim Sixty-Three, Boyle claims counsel was ineffective in failing to object to a photograph of a blue BMW parked in Boyle's driveway. Boyle claims the photograph was highly prejudicial and had counsel objected "there is a reasonable probability of a different outcome." (ECF No. 167 at 73). The testimony at trial was that following one of the robberies, the robber fled in a blue BMW. *See* TT, 3/12/19 at 17:10-11. The photograph at issue is of a blue BMW that was parked in Boyle's driveway, the photograph being recovered from Boyle's cell phone. While the photograph was likely prejudicial, in a general sense – i.e., detrimental to Boyle - the evidentiary rules do not preclude mere prejudice. They address only <u>unfair</u> and impermissible prejudice. The photograph was properly admitted under the Federal Rules of Evidence, would have been admitted even if an objection had been made, and counsel did not err by failing to object to its admission. Claim Sixty-Three will be denied.

Claim Sixty-Four involves a financial summary chart, Exhibit 1302, utilized during the testimony of FBI financial accountant, Eric Hiser, who had compiled information from various financial documents, such as the Boyles' bank accounts, Theresa Boyle's 401K records and other records relating to her. *See* TT, 3/12/19, 143:2 – 145:9. Boyle contends the chart was not produced during discovery and counsel was ineffective in failing to object. However, the chart was properly admitted into evidence under Rule 1006 of the Federal Rules of Evidence. Counsel was not ineffective in failing to object and, therefore, Claim Sixty-Four will be denied.

### Claims Forty-Three and Sixty-One Failures Re: Jury Instructions

Claim Forty-Three relates to the testimony of Detective McGee. Boyle contends Detective McGee's testimony was based entirely on hearsay and counsel failed to renew his

objection to this testimony or have the trial court instruct the jury regarding the detective's

hearsay testimony.  This claim is not supported by the record.  The trial transcript reflects that

counsel repeatedly made hearsay objections during Detective McGee's testimony.  And the trial

court did in fact provide limiting instructions on as to that testimony during the course of this

testimony.  *See* TT, 3/12/19 at 210:25 -211:4.  Therefore, Ground Forty-Three will be denied.

In Claim Sixty-One, Boyle claims counsel was ineffective in failing to request a "missing

witness" instruction.  In essence, Boyle is displeased that the Tracfone business records were

introduced into evidence under the business records exception to the broader Rule against the use

of hearsay evidence.  He contends the Government should have (or, in reality was required to

have) called a Tracfone employee "to authenticate the highly-contested 'activation record.'"

(ECF No. 167 at 75).  What Boyle fails to appreciate is the Tracfone records were properly

authenticated under Federal Rule of Evidence 901(11) – the records were accompanied by a

certificate of the custodian or another qualified person complying with the requirements of

Federal Rule of Evidence 803(6)(A)-(C).  As such, the Government was not required to produce

a Tracfone employee to authenticate these records and a missing witness instruction was not

warranted.  *See U.S. v. Pedroni*, 45 F. App'x 103, 107 (3d Cir. 2002).  Because the evidence

was properly admitted, even had counsel requested a missing witness instruction such request

would have been denied.  The Court finds that counsel's failure to request a missing witness

instruction was not the result of deficient performance nor did it result in any prejudice to Boyle.

Claim Sixty-One will be denied.  *See United States v. Pedroni*, 45 F. App'x 103, 107 (3d Cir.

2002); *see also* Comment, Third Circuit Model Instruction 4.16 -  Missing Witness (discussing

when to give missing witness instruction at defendant's request).

**Claims Fifty-Nine and Sixty – Failure to Argue Certain
Points During Closing Arguments**

Despite the trial transcript showing defense counsel gave a lengthy closing argument, Boyle contends counsel failed to make two points: (1) that the Government had not presented any evidence to prove Boyle was the perpetrator (Claim Fifty-Nine) or (2) that Boyle knew the credit card transactions were the proceeds of a crime (Claim Sixty).

Undeniably, the Supreme Court has held there to be a constitutional right to a summation. *See Herring v. New York*, 422 U.S. 853, 863 n.13 (1975). However, a closing argument is usually given in a manner consistent with the theory of the case; it cannot therefore be deficient in a manner sufficient to support a claim of ineffective assistance of counsel unless the theory and method of implementing the theory were unreasonable under the circumstances. *See, e.g., Darden v. Wainwright*, 477 U.S. 168, 183 (1986).

The Court has reviewed the transcripts of the closing arguments in this case, including Attorney Tinari's closing. *See* TT, 3/13/2019, 142:1 – 181:10. Defense counsel gave a lengthy closing hammering home the defense's main theory: "Mr. Boyle is not guilty of these charges . . . Not only is he not guilty, but he's factually innocent of these charges," *id*. at 42:6-9; "He did not do it. He would not do it. And we ask you to find him not guilty of all the charges." *Id*., 81:7-10. The record reflects the weight of the evidence against Boyle was heavy. See *Boyle*, 849 F. App'x at 327. Defense counsel touched on virtually every conceivable defense and was able to give an effective closing while maintaining his overall strategy. In short, the Court concludes that Attorney Tinari's closing was not deficient to support a claim of ineffective assistance of counsel. Claims Fifty-Nine and Sixty will be denied.

**Claim Sixty-Two – Failure to Object to Jury's Request to**
**View Surveillance Video**

During its deliberations, the jury requested to view the surveillance video from the

Warminster Library, which had been admitted into evidence as Exhibit 1908.  *See* TT, 3/14/19,

47:14.  The trial court allowed the jury to see the requested video and Boyle claims counsel was

ineffective in failing to object.  Undeniably, a jury may request and review physical evidence

that was formally admitted into evidence during the trial, such as photographs, documents, and

video evidence.  If counsel had objected to the jury's request to view this video, his objection

would have been denied.  Therefore, Ground Sixty-Two will be denied.

### iii.  Claims Regarding Representation Post-Trial

**Claim Sixty-Five, Sixty-Six, and Sixty-Seven – Failure to Perform**
**Work After Being Appointed As CJA Counsel[25]**

Boyle claims that after his counsel was appointed as CJA counsel following the trial,

counsel "neglected" to perform any work.  (Claim Sixty-Six).  For example, in Claim Sixty-Five,

Boyle claims counsel "outsourced" the writing of the post-trial motions to his then-associate and,

relatedly, in Claim Sixty-Seven, he claims defense counsel committed fraud upon the Court by

submitting a voucher for legal services that he did not provide.  As the Government correctly

argues, the issue in this § 2255 Motion, is whether Boyle received adequate representation, not

whether defense counsel actually wrote the post-trial motions.  (ECF No. 175 at 46).

---

[25]    Boyle contends counsel's alleged "dereliction" and "misconduct" after being appointed to
the CJA panel, "resulted in constructive denial of counsel, another structural error."  ECF No.
167 at 89.  "Total deprivation of the right to counsel" is one of the classes identified in *Lewis* as
constituting a structural error.  However, as noted above, the Court finds that Boyle was not
"totally" deprived of total counsel (or deprived of counsel at all) and in fact, has found just the
opposite, finding there are no grounds to find that Boyle received inadequate representation after
his counsel was appointed to the CJA panel.  Any claim of structural error on this ground fails.

Boyle does not make any argument regarding the quality of the post-trial motions, and after review of these documents, the Court finds there would be no grounds upon which to make such an argument.  Accordingly, Claims Sixty-Five and Sixty-Six will be denied.  Claim Sixty-Seven will be denied as it is non-cognizable on habeas review.

### Claim Sixty-Eight – Failure to File "Response" to Court Order

Boyle's last ineffective assistance of counsel claim is that counsel was ineffective in failing to file a "response" to the court's Opinion and Order issued on September 4, 2019 (ECF Nos. 130 and 131), which "erroneously" denied his post-trial motions.  The Federal Rules of Criminal Procedure do not provide for "responses" to court Opinions.  As the Government aptly notes, "the defendant's remedy was to appeal the district court's ruling to the Third Circuit.  The defendant did appeal and the Third Circuit affirmed the district court's rulings."  (ECF No. 175 at 47).  This claim will be denied as there was no error on the part of defense counsel.

In sum, even if Boyle was able to demonstrate that either of his counsel's performances fell below an objective standard of reasonableness (as to which he has made no such showing), the Court concludes Boyle remains unable to demonstrate that either counsel's allegedly deficient performance prejudiced his defense.  The evidence against Boyle at trial was more than sufficient to sustain the verdict, as our Court of Appeals concluded on direct appeal.  Indeed, Boyle argued on direct appeal three claims of insufficiency of the evidence.  The Court of Appeals concluded each lacked merit finding: (i) the circumstantial evidence was more than adequate; (ii) the testimony from the bank employees that the banks were FDIC-insured, as well as the self-authenticating FDIC certificates of insurance, were more than sufficient; and (iii) expert testimony showed that Boyle knowingly laundered money.  *Boyle*, 849 F. App'x at 330.

With this context, it is clear Boyle has not demonstrated "a reasonable probability . . . sufficient to undermine confidence" in his conviction.  *Strickland*, 466 U.S. at 694.

**B.    Claims of Trial Court Error - Claims Twenty-Seven, Sixty-Nine, and Seventy**

Boyle's final group of claims consists of three allegations of trial court error.  These claims are either barred under *DeRewal* or defaulted under *Frady.*  However, in an abundance of caution, the Court will proceed to review each claim.

In Claim Twenty-Seven, Boyle argues he was denied his right to a fair trial under the due process clause of the Fifth Amendment when the trial judge did not analyze the evidence of Boyle's prior convictions under Rule of Evidence 403's balancing test.  On direct appeal, Boyle raised the issue that the trial court improperly admitted the 404(b) evidence.  The Court of Appeals found no error.  Boyle is prohibited from relitigating the same issue in a § 2255 petition.  *See DeRewal*, 10 F.3d at 105 n.4.

But assuming this is a different issue as Boyle is now arguing the trial judge did not perform a proper Rule 403 analysis, and assuming this issue has not been waived, the claim still fails.

The record reflects that the trial judge thoroughly considered Rule 403 in ruling on both the pretrial and post-trial motion seeking a new trial.  *See* ECF Nos. 37, 38, 130; Tr. of Mot. Hearing, ECF No. 42.  And while the trial court found the evidence was "prejudicial, that is, was not helpful to" Boyle, the court determined that the testimony was highly relevant to demonstrate a motive, preparation, and identity.  Further, the record demonstrates the trial judge took steps to limit the prejudicial effect of this evidence:

● the evidence was kept to a minimum and duplicative testimony on this point was forbidden. *See e.g.,* TT, 3/4/19, at 184:1 – 185-14; TT, 3/5/19, at 14: 1-6; and 60:3-61-6;

● the evidence was not allowed to go in to the jury room during deliberations. *See e.g.,* TT, 3/5/19, at 59:5-17;

● before the witnesses testified as to the 404(b) evidence, the Court provided a limiting instruction to the jury. *See e.g.*, TT, 3/4/19, at 176:24-178.4; and

● reiterated those limiting instructions again during the final jury instructions. *See e.g.*, TT, 3/14/19, at 18:7-19:16.

District Courts are afforded substantial deference when weighing evidence under Rule 403. *United States v. Lee,* 612 F.3d 170, 191 (3d Cir. 2010). Contrary to Boyle's claim, the trial court balanced the probative value of the evidence against its prejudicial effect and correctly determined the evidence was highly relevant to demonstrate a motive, preparation, and identity.

For all these reasons, Claim Twenty-Seven will be denied.[26]

In Claim Sixty-Nine, Boyle claims that by not granting his motion for substitution of counsel prior to sentencing, the trial court denied Boyle his Sixth Amendment right to counsel. This claim is procedurally defaulted as it should have been raised on direct appeal. But with that said, the claim will be denied on its merits. The record reflects Boyle requested the appointment of Attorney Michael Sullivan, who at one time had been an associate of Attorney Tinari, to represent him during the sentencing phase and possibly on appeal. *See* Dec. 10, 2019 Tr. at 4 (ECF No. 158). A status conference was held on December 10, 2019, regarding Boyle's request for new representation. Attorney Sullivan testified at the hearing that he was currently employed

---

[26]    To the extent Boyle has raised a related ineffective assistance of counsel claim in Claim Twenty-Six, such claim will be denied. Counsel cannot be found to be ineffective for failing to raise a claim that has no merit.

full-time with a state court judge. *Id.*, at 17. As the trial court explained, given Attorney

Sullivan's employment status, he could not be appointed to represent Boyle, and this Court finds

the trial court committed no error in denying Boyle's motion. (ECF No. 140). Claim Sixty-Nine

will be denied on this basis.

Boyle's third and final trial court error claim, Claim Seventy, is that his Sixth

Amendment right to counsel was violated when the trial judge reappointed Attorney Henry as

stand-by counsel for sentencing purposes. This claim, too, is procedurally defaulted as it should

have been raised on direct appeal. But with that said, the claim will be denied on its merits.

On January 9, 2010, about two weeks after Boyle's motion for substitution of counsel

was denied, he filed a request for self representation indicating "irreconcilable differences and a

complete breakdown in communication" with Attorney Tinari had occurred. (ECF No. 142).

The trial court granted his request to represent himself, but also ordered that the Federal

Community Defender Association be re-appointed as stand-by counsel. (ECF No. 144).

Boyle contends he had previously "discharged" Attorney Henry for violating the

attorney-client privilege. But as noted above, the Court has found there is no evidence in the

record that Attorney Henry violated the attorney-client privilege. *See supra*, Claim 1. The

decision to appoint standby counsel is vested in the district court's discretion, and the wishes of

the defendant in that regard carry no weight. *See McKaskle v. Wiggins*, 465 U.S. 168, 184

(1984) ("A defendant's Sixth Amendment rights are not violated when a trial judge appoints

standby counsel—even over the defendant's objection"). The appointment of standby counsel

can "relieve the judge of the need to explain and enforce basic rules of courtroom protocol or to

assist the defendant in overcoming routine obstacles that stand in the way of the defendant's

achievement of his own clearly indicated goals." *Id*.

The Court finds there was no error in the trial court re-appointing the Federal Community Defender Association as stand-by counsel.  Therefore, Claim Seventy will be denied.[27]

## V.   CERTIFICATE OF APPEALABILITY

No certificate of appealability should issue on any of Boyle's claims. A petitioner may only appeal "the final order in a proceeding under section 2255" if a judge "issues a certificate of appealability[.]" 28 U.S.C. § 2253(c)(l)(B). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, when a petition is denied on procedural grounds, a certificate of appealability may issue only if (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  *Id*. at 484.  Jurists of reason would not debate that each of Boyle's claims should be denied on their merits.   Therefore, no certificate of appealability will issue.

## VI.   CONCLUSION

Having reviewed all of Boyle's claims, and for the reasons explained in this Memorandum Opinion, it is clear that all are without merit and that Boyle's motion to vacate sentence must be denied.  A certificate of appealability will likewise be denied.

The related Motions at ECF Nos. 202, 212, 232, and 239 will also be denied.

---

[27]    Boyle claims that the trial court's denial of his motion for substitution of counsel and the re-appointment of Attorney Henry constitute structural errors requiring per se reversal.  ECF No. 167 at 90.  Even if the trial court had erred in these rulings, which the Court has found it did not, such errors would not rise to the level of a structural error.

An appropriate Order follows.


Date:   January 5, 2026                          BY THE COURT:

                                                 s/ Mark R. Hornak
                                                 Mark R. Hornak
                                                 United States District Judge

cc:     RICHARD BOYLE
        HR 8086
        SCI PHOENIX
        1200 MOKYCHIC DRIVE
        COLLEGEVILLE, PA 19426
        (via U.S. First Class Mail)

        All counsel of record
        (via ECF electronic notification)